John W. Schilt (SBN 221186)
TENAX Law Group, P.C.
145 Park Place, Suite A
Richmond, California 94801
Telephone: (510) 234-2808
Facsimile: (510) 234-6009
Email: johnschilt@tenaxlawgroup.com

Attorneys for Plaintiff RECYCLE FOR CHANGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RECYCLE FOR CHANGE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND, a California Municipal Corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

COMES NOW Plaintiff RECYCLE FOR CHANGE and alleges as follows:

## PARTIES

1. Plaintiff RECYCLE FOR CHANGE (“Plaintiff”), is a California nonprofit public benefit corporation headquartered in Richmond, California.

2. Defendant CITY OF OAKLAND (“Defendant”) is a municipal corporation existing under the laws of the State of California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to 28 USC § 1331

because the action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 USC § 1343(a)(3), in that it is brought to redress constitutional violations and deprivations of law under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 42 USC § 1983, which provides causes of action for the protection of civil and constitutional rights and damages; and under 42 USC § 1988, to secure costs and reasonable attorneys fees as part of the case. This Court has supplemental jurisdiction over Plaintiff's California constitutional claims asserted herein because those claims form part of the same case or controversy as the federal questions asserted herein, pursuant to 28 USC § 1367(a).

4. The venue of this action is proper, in the Northern District of California, pursuant to 28 USC § 1391(b), in that (i) Plaintiff owns property that is situated within this judicial district, (ii) Defendant is situated within this judicial District, and (iii) all of the claims asserted by Plaintiff arose within this judicial district.

## NATURE OF ACTION

5. This is a civil action wherein plaintiff RECYCLE FOR CHANGE prays for a declaratory judgment, injunction and damages against Defendant CITY OF OAKLAND in order to prevent Defendant from acting under color of state law to deprive Plaintiff if its constitutional rights.

6. Through this lawsuit, Plaintiff prays for a declaration from this Court, pursuant to 28 USC § 2201, 42 USC § 1983 and Federal Rule of Civil Procedure 57. The ordinance at issue, Ordinance No. 13335 which was passed on October 22, 2015 ("the Ordinance") and adds Chapter 5.19 to the Oakland Municipal Code ("OMC") is unconstitutional insofar as it deprives Plaintiff of certain rights and privileges guaranteed under the United States Constitution and the California Constitution. Specifically, the Ordinance amounts to an unconstitutional prior restraint on speech insofar as it imposes high application fees, a complex permit requirement, strict limitations on the placement of UDBs and vests improper discretion in city officials to deny such permits. It also, both facially and as applied, treats different collection receptacles differently and treats different speakers differently. Because of these provisions, the Ordinance violates Plaintiff's rights under the Free Speech Equal Protection clauses of the United States Constitution and California Constitution.

7. Plaintiff will be seeking temporary, preliminary and permanent injunctive relief enjoining defendant from enforcing the ordinance, which went into effect on or about October 20, 2015, and Defendant is preparing to enforce against Plaintiff.

## GENERAL BACKGROUND ALLEGATIONS

### A. RECYCLE FOR CHANGE and Its Charitable Mission

8. Plaintiff RECYCLE FOR CHANGE is a California nonprofit public benefit corporation that was founded in 2000 and holds 501(c)(3) status with the I.R.S. Plaintiff's mission is twofold. First, Plaintiff collects used clothing and other textiles that would otherwise be discarded and end up in landfills. Plaintiff redirects those unwanted textiles to be reused and/or recycled. The purpose of this activity is to prevent waste and to protect the environment. Second, Plaintiff uses the revenue generated from its reuse/recycling activities to provide financial support for other nonprofits that are working to fight poverty in poor communities in Africa, South America, Central America and the Caribbean.

9. Plaintiff also partners with other Bay Area charities. It has donated time and resources to Sister Alice Muhammad for the formation of the nonprofit charity Helping Hands: Together We Thrive, which is a community food pantry and assistance program in East Oakland. Plaintiff donates all non-perishable food items it receives as well as infant and adult diapers, soap and other sundry goods to that organization. Plaintiff also helps prepare those items for distribution to economically disadvantaged communities in the Bay Area.

10. Plaintiff has also partnered with the Marin School of Environmental Leadership by assisting high school students with a semester-long environmental project.

11. In the Spring of 2015, Plaintiff partnered with Wells Fargo in San Francisco in a textile recycling contest that was sponsored by the San Francisco Department of the Environment. In June 2015, Plaintiff was awarded a grant from the San Francisco Department of the Environment in order to expand textile recycling in the City of San Francisco in commercial and multi-family locations.

**B. Plaintiff's Use of Unattended Donation Bins (UDBs) to Solicit Charitable Donations**

12. In furtherance of the above-described objectives, Plaintiff operates and maintains unmanned donation bins ("UDBs") to receive donations of unwanted clothing and other textiles from individuals who wish to contribute to Plaintiff's mission.

13. Plaintiff's UDBs are made of steel. The dimensions of Plaintiff's UDBs are: approximately 6'8" tall, 3 feet wide and 4 feet deep. The total footprint occupied by each UDB is approximately **12 square feet**.

14. Plaintiff's UDBs are designed to be easily visible and accessible to individuals who wish to donate unwanted clothing/textiles to Plaintiff. The UDBs are painted and are clearly marked as belonging to Plaintiff. The UDBs are also clearly marked with Plaintiff's contact information so that anyone can contact Plaintiff for any reason. The UDBs have a chute in the front, much like a mailbox chute, where people can deposit their donations. They can only be accessed with a key.

15. Photos of two of Plaintiff's UDBs are shown here:






16. The UDB's are placed on private property, with permission from the persons in lawful possession of the properties on which they are located. Before a UDB can be placed, Plaintiff has to find parties who are willing to have one of Plaintiff's UDBs placed on their property. In order to bring that about, Plaintiff typically has to approach and communicate its mission to such a party and

convince that party to allow placement of a UDB. It takes time and resources for Plaintiff to identify a potential site host, communicate Plaintiff's mission to a potential site host and negotiate a written agreement for a site. Over 99% of Plaintiff's UDBs involve no payment to the site host. Rather, a site host agrees to have a box if the site host identifies/agrees with Plaintiff's mission.

17. Although the UDBs are not manned by Plaintiff, the properties they are placed at are typically occupied. The UDBs are also visited and serviced at regular intervals by Plaintiff's employees. The frequency of the visits is determined by the volume of donations received . The average UDB is visited an average of 2 to 3 times per week.

18. **The revenue generated by Plaintiff's UDBs is, *by far*, the major source of Plaintiff's income. That revenue is used to fund Plaintiff and charitable activities in the Bay Area and around the world**.

19. Because Plaintiff is a nonprofit public benefit corporation, all proceeds it earns from reselling donated items are used to pay for operational expenses, with the remaining proceeds being donated to the above-described charitable organizations and projects.

20. Plaintiff has earned goodwill in the communities in which it operates. That goodwill arises, in part, from Plaintiff's visibility. It also arises from the perception that Plaintiff's UDBs are clean and easily accessible. In order to maintain that goodwill, Plaintiff is responsive to any problems that arise in relation to its UDBs. That includes paying out-of-pocket to remove materials that are dumped in proximity to its UDBs, even if those materials are not of value to Plaintiff.

21. For a variety of reasons, Plaintiff loses approximately 20% of its site hosts in a given year and must find new locations for those UDBs.

### C. Plaintiff's Operations in the City of Oakland

22. Plaintiff has maintained UDBs in Oakland since 2005. It currently has UDBs at 63 different locations within the city. In 2013, Plaintiff's UDBs in Oakland diverted over 637,000 pounds of textiles from local landfills. In 2014, that number increased to pounds of textiles. The quantity of diverted textiles in Oakland in 2015 was over 616,000, through September 30, 2015.

### D. Defendant's Efforts to Ban Unattended Donation Boxes

23. There have been various meetings of the Oakland City Council and other committees

on the issue of regulating or banning UDBs. On or about April 22, 2014, Defendant placed a **45-day moratorium on new placements of UDBs**. The moratorium was extended at subsequent City Council meetings. In the current version of the Ordinance, there is a provision stating that if a TRO is sought against the ordinance, the ban on new placements will be revived.

24. At a number of the meetings described above, various speakers, **including members of the Oakland City Council, spoke of their desire to enact a total, citywide ban on UDBs**. Several city Council members voiced personal preferences for "local" charities and voiced disdain for Plaintiff and other organizations.

25. An outright ban against UDBs appears to have been shelved by the City in favor of stringent regulations.

**E. Defendant's Efforts to Strictly Regulate Unattended Donation Boxes**

26. At a City Council meeting on October 6, 2015, staff from Defendants Planning & Building Department presented the City Council with a final plan for regulating UDBs. Darren Ronaletti of the Dept. of Planning & Building stated on the record that the city asked for "stricter" regulations and enforcement mechanisms. In response to that request, city staff proposed a special permit for UDBs, a minimum 1000-foot radius between UDBs, no placement of UDBs in residential zoned areas of the city and denial of a renewal permit for an open citation. Additional provisions included that any UDB had to be placed within 10 feet of an *existing* light source. It called for a permit fee of $535. It also includes a private right of action against box operators. Finally, it also calls for denial of any renewal permit for a UDB that received three or more complaints.

27. At the October 6, 2015 City Council meeting, Councilmember Dan Kalb stated of the proposed ordinance, "**It is very important that we regulate them very strictly, as this appears to do**." Staff member Neil Gray acknowledged that his department had considered allowing UDBs in residential/commercial areas zoned "RU5," but later decided against that. They also excluded pedestrian-oriented commercial zones.

28. Also at the October 6, 2015 City Council Meeting, Councilmember Desley Brooks voiced "tremendous concern" regarding the distribution of zones in which UDBs were approved. Specifically, she noted that some communities appeared to be "exempted out." She stated words to

the effect, "Now, all of a sudden you are making those areas 'intimate commercial' to avoid putting boxes there."

29. Also at the October 6, 2015 City Council meeting, Councilmember Noel Gallo acknowledged that **the upkeep of the boxes had improved** since the city had begun its efforts to regulate UDBs.

30. On October 20, 2015, the City Council voted to pass new Ordinance No. 13335 ("the Ordinance") for the purpose of regulating UDBs. (A copy of the Ordinance is attached hereto as **Exhibit A**.) The Ordinance establishes Oakland Municipal Code (OMC) section 5.19. A copy of OMC section 5.19 was attached to the Ordinance and was incorporated therein. (A copy of section 5.19 is attached hereto as **Exhibit B**.) The Ordinance contains provisions that do the following:

a. establish a permit requirement involving application fees of approximately $531 and annual renewal fees of approximately $245;

b. place a 1,000-foot exclusion zone around each permitted UDB, which prohibits the placement of another UDB within in that area;

c. ban UDBs from residential zones, even from higher density zones and from residential/commercial zones;

d. ban UDBs from heavily-traveled pedestrian corridors that serve mass transportation;

e. allow a private right of action against UDB operators, with a provision for attorneys' fees;

f. provide a basis for denying a renewal permit when there are open administrative complaints against a UDB operator;

g. provide a basis for denying a renewal permit if there is a history of three complaints against a UDB, regardless of the disposition of the complaints; and

h. **Revive the previous moratorium on any new UDBs in the event that the ordinance is challenged by way of injunctive relief**. (This has the effect of keeping a ban effective for an indeterminate time period.)

31. Under the provisions of the ordinance, **exemptions** are carved out for "local" charities

that maintain brick-and-mortar storefronts. That is, they are exempt from the permit application and from paying the application fee and renewal fees.

**E. The Ordinance's Effect on RECYCLE FOR CHANGE**

32. Individually, the above-described restrictions each has a tendency to chill speech. In the aggregate, the effect is to impose undue burdens on free speech. Plaintiff has already experienced a reduction in the number of UDBs it has in Oakland. The high fee structure, exposure to possible litigation, zoning bans and 1000-foot distance exclusion zone operate as a de facto ban. **Defendant has carried out its desire to impose the "very strict" restrictions that were discussed in the City Council meetings**.

**FIRST CAUSE OF ACTION**
**Violation of the United States Constitution,**
**Free Speech Clause, First and Fourteenth Amendments**

33. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

34. The Ordinance and resulting OMC section 5.19 give rise to a broad, prophylactic rule that amounts to a prior restraint on free speech and violates the United States Constitution, both on its face and as applied to plaintiff.

35. The solicitation of charitable donations such as clothing, shoes and other textiles is a form of speech fully protected by the First Amendment to the United States Constitution.

36. Plaintiff has a constitutional right to engage in this protected speech and may not be prohibited or unduly restricted from exercising this right unless Defendant can prove that its restriction on Plaintiff's speech does not burden substantially more speech than necessary and is narrowly tailored to further a substantial state interest.

37. At all times alleged herein, Defendant has been and will continue to be acting under the color of state law and engaging in state action.

38. Constitutionally protected activities may not be directly and substantially limited, diminished, prohibited, or chilled by state actions, including the actions of local governments such as Defendant, acting under the color of state law.

39. The ordinance's severe limitation on donation bins in the city directly, indirectly, and substantially limits plaintiff, as well as a number of other entities, from engaging in constitutionally protected speech.

40. The ordinance substantially limits plaintiff, as well as other similarly-situated organizations, from engaging in protected speech in the city simply because those organizations utilize UDBs as a means solicitation in furtherance of their free speech rights.

41. The ordinance is not supported by any legitimate state interests, nor is the ordinance narrowly tailored to further said interest, since the city's interest can all be attained without enacting prior restraints on, and chilling, constitutionally-protected activities.

## SECOND CAUSE OF ACTION
**Violation of the California Constitution,**
**Freedom of Speech, Article 1, Section 2**

42. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

43. Under Article 1, Section 2 of the California Constitution, "[a] law may not restrain or abridged liberty of speech or press."

44. Defendant has deprived, and continues to deprive, Plaintiff of its right to freedom of speech by adopting and enforcing the regulatory scheme and the specific provisions described above. Those provisions bar Plaintiff and similarly-situated individuals and organizations from operating UDBs in large areas of the City of Oakland and impose substantial application fees and procedures, while exempting other operators from some of those restrictions. These actions by Defendant amount violations of Article 1, Section 2 of the California Constitution.

## THIRD CAUSE OF ACTION
**Violation of the United States Constitution,**
**Equal Protection Clause, Fourteenth Amendment**
**42 USC § 1983**

45. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

46. The equal protection clause prohibits discrimination by a government entity that

burdens a fundamental right.

47. The right to freedom of speech is a constitutionally-protected fundamental right.

48. Zoning and other ordinances that affect fundamental rights are subject to strict scrutiny.

49. Defendants asserted interests are not "compelling" for purposes of a constitutional analysis.

50. Furthermore, the Ordinance and the specific provisions described above are not narrowly tailored in order to achieve Defendant's asserted interests.

51. The ordinance's restrictions on UDBs are intended to protect local nonprofits, such as Goodwill Industries, St. Vincent de Paul and Salvation Army, who maintain traditional "brick and mortar" storefronts used for the collection of items, including textiles, for recycling.

52. Defendant has a pattern and practice of treating religious and nonreligious speech differently. This includes the distinction in OMC 5.18 for alternative permitting channels for religious charitable solicitation versus nonreligious charitable solicitation.

53. Defendant has singled out UDBs for ***enhanced*** restrictions and regulations while not apply in similar restrictions and regulations to receptacles, such as trash cans, which are also intended for the disposal of unwanted items but which are not charitable solicitations. By way of example, there is not a similar restriction prohibiting trash cans from being placed less than 1000 feet from each other.

54. Additionally, the ordinance contains a narrow exception that exempts donation bins operated by recycling centers on their own property from the city's otherwise strict regulations.

55. The ordinance, therefore, constitutes a content-based restriction on speech. It significantly impairs Plaintiff's ability to carry out its charitable mission by soliciting charitable donations by means of its UDBs. By muting Plaintiff's speech while at the same time protecting the speech of traditional "brick and mortar" recyclers that the Defendant considers to be "local" charities, Defendant has impermissibly restrained the content of Plaintiff's speech and has unconstitutionally favored some speech over other speech.

56. The ordinance is subject to strict scrutiny is a form of discrimination amongst

speakers.

57. Plaintiff is suffering and will continue to suffer irreparable harm by the city's enforcement of OMC 5.19.

58. Plaintiff will also suffer substantial monetary damages due to the donations it is being forced to forgo based on the city's actions. Those donations would otherwise have been collected and then made available to those in need around the country and around the world.

**FOURTH CAUSE OF ACTION**
**Violation of the California Constitution,**
**Equal Protection, Article 1, Section 7**

59. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

60. Article 1, Section 7 of the California Constitution guarantees equal protection of the lost all persons.

61. Defendant has deprived and continues to deprive Plaintiff of its right to equal protection of the laws by adopting and enforcing the Ordinance, which substantially limits Plaintiff from operating UDBs in the city, , while permitting other similar receptacles such as trash containers to operate in the city in violation of Article 1, Section 2, of the California Constitution.

62. Defendant has also deprived and continues to deprive Plaintiff of its right to equal protection of the laws by carving out exemptions for "local" charities that maintain "brick and mortar" storefronts, in violation of Article 1, Section 2, of the California Constitution.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff RECYCLE FOR CHANGE respectfully requests a judgment against Defendant CITY OF OAKLAND on each and every count alleged herein as follows:

1. Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the court retains jurisdiction of this matter for the purpose of enforcing the courts order;

2. Pursuant to 28 USC § 2201, declare the aforementioned ordinance, and to the extent such provision is not severable, the entire Oakland municipal code, to be in violation of the first and 14th amendments to the United States Constitution, and further declare that plaintiff is permitted as of right to operate UDBs as a means of exercising its constitutional right to solicit charitable donations;

3. Pursuant to 28 USC §2202, Fed. Rule Civ. Proc. 64, 42 USC § 1983 and 42 USC § 2000cc-4, permanently enjoin defendant from enforcing the ordinance to the extent that it substantially limits Plaintiff from operating donation bins in the city by means of prior restraints on speech rather than by punitive actions against operators who violate valid regulations;

4. Pursuant to 28 USC § 2202 and Fed. Rule Civ. Proc. 64, award plaintiff exemplary, compensatory and nominal damages;

5. Pursuant to 28 USC § 2202, Fed. Rule Civ. Proc. 65, 42 USC § 1983, 42 USC § 1988 and 42 USC §2000cc-4, award Plaintiff all necessary and appropriate equitable relief;

6. Pursuant to 42 USC § 1988, 42 USC § 2000cc-4(d), Fed. Rule Civ. Proc. 54(d) , California Govt. Code § 800 and other applicable law, award Plaintiff its reasonable attorneys fees and costs; and

7. Grant such other and further relief, injunctive or otherwise, as the Court deems equitable, just and proper.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action for all issues so triable.

Dated: November 5, 2015

Respectfully Submitted,

**TENAX Law Group, P.C.**

/s/ John W. Schilt
Attorney for Plaintiff RECYCLE FOR CHANGE