BARBARA J. PARKER, CITY ATTORNEY, SBN 069722
OTIS MCGEE, JR., CHIEF ASSISTANT CITY ATTORNEY, SBN 071885
JAMES F. HODGKINS, SENIOR DEPUTY CITY ATTORNEY, SBN 100460
SELIA M. WARREN, DEPUTY CITY ATTORNEY, SBN 233877
**OFFICE OF THE CITY ATTORNEY**
1 Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94610

Telephone: (510) 238-6524
Facsimile: (510) 238-6500
Email: SWarren@oaklandcityattorney.org

Attorneys for Defendant
CITY OF OAKLAND
X04204/1788710

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

RECYCLE FOR CHANGE,
Plaintiff,

v.

CITY OF OAKLAND, a California Municipal Corporation,

Defendant.

Case No. 3:15-cv-05093-WHO

**DEFENDANT CITY OF OAKLAND'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**[DECLARATION OF SCOTT MILLER IN SUPPORT THEREOF CONCURRENTLY FILED]**

DATE: November 19, 2015
TIME: 2:00 p.m.
CTRM: 2, 17th Floor

Defendant City of Oakland (the “City”) hereby respectfully submits this opposition (“Opposition”) to Plaintiff Recycle for Change (“Plaintiff”)’s Motion for a Temporary Restraining Order (“Motion”).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

On October 20, 2015, the City Council passed Ordinance 13335 C.M.S. (the “Ordinance”) to regulate unattended donation and collection boxes (“UDCB’s”) within City limits. Among other things, the Ordinance established a new chapter in the Oakland Municipal Code (“OMC”), which contains regulations for the placement, appearance, operation and maintenance of UDCB’s. Plaintiff now seeks a Temporary Restraining Order (“TRO”) to prevent the enforcement of the Ordinance on the ground that Plaintiff is subject to an immediate threat of irreparable harm. (Motion at 7.) Plaintiff is in no such position. The Ordinance includes a grace period of up to 120 days: UDCB owners have up to 90 days from the final passage of the Ordinance (January 18, 2016) to comply with the new permit requirements, and 120 days from final passage (February 17, 2016) before the City actually removes noncompliant UDCB’s. (*See* Ord. 13335 C.M.S., Section 5(b)-(c).) To that end, and as set forth herein, Plaintiff cannot meet its burden to show that a TRO is necessary right now. Indeed, no harm will come to Plaintiff if this matter proceeds by a regularly noticed motion for a preliminary injunction. Unlike Plaintiff, however, the City will be greatly prejudiced if it is forced to defend this TRO without an adequate chance to fully brief the issues. Due to the grace period in the Ordinance, setting this matter for a hearing on a preliminary injunction will not affect the status quo in the interim. The Motion should be denied.

**II.**

**FACTUAL BACKGROUND**

UDCB’s are unstaffed drop-off boxes, typically up to seven feet in width and height, which accept clothing, textiles, books and other items to be used by the operator for distribution, resale, or recycling. Since 2008, non-profit and for-profit organizations have placed UDCB’s at a variety of places within the City, including, among other places, at schools, grocery stores, gas

stations, in parking lots and near businesses. On May 8, 2012, the Community and Economic Development Committee directed Planning staff to develop regulations for the placement and maintenance of UDCB's. (Declaration of Scott Miller ("Miller Decl.") ¶¶ 2-3 & Exh. A at p. 3.) On April 22, 2014, pursuant to Government Code section 65858, the City Council adopted Emergency Ordinance 13225 C.M.S., which established a temporary 45-day moratorium on the placement of new UDCB's within the City. (Miller Decl. ¶ 4 & Exhs. B-C.) The City Council also directed staff to return with a permanent set of regulations to be presented to the City Council. (*Id.*) Pursuant to Government Code section 65858, the City Council subsequently extended the moratorium twice, to March 3, 2015, and ultimately to December 31, 2015. (Miller Decl. ¶¶ 5-6 & Exhs. E (Emergency Ordinance 13232 C.M.S. (6/3/14)), G (Emergency Ordinance 13295 C.M.S. (2/15/15)).) Prior to 2014, the City had never expressly regulated UDCB's.

Numerous local governments in California and throughout the United States have concluded that UDCB's require specific regulations due to their unique set of secondary impacts, which adversely affect the public health, safety and welfare. For example, since UDCB's are publically accessible but unmonitored, they attract public nuisance issues such as illegal dumping, scavenging and graffiti. Likewise, UDCB's have also been placed in parking spaces or otherwise in vehicle maneuvering areas, which affects vehicle and pedestrian safety. (Miller Decl. ¶ 2, Exh. A at p. 2.)

On October 20, 2015, the City Council passed Ordinance 13335 C.M.S. (the "Ordinance") to regulate UDCB's within City limits. (Miller Decl. ¶ 7 & Exh. H.) Among other things, the Ordinance established Chapter 5.19, a new chapter in the Oakland Municipal Code ("OMC"), which contains regulations for the placement, appearance, operation and maintenance of UDCB's. (Miller Decl. ¶¶ 8-10.)

The Ordinance regulates all UDCB's. Except for identification purposes and appropriate registration, the Ordinance regulates all UDCB's in the same manner, regardless of whether the owner is a non-profit or a for-profit entity. Likewise, the Ordinance does not distinguish between

the causes supported or the particular message promoted by the UDCB operator. (Miller Decl. ¶ 11.)

UDCB's that are on the same lot or that are enclosed within an occupied principal building on property owned or leased by the UDCB operator are not required to submit a permit application. (*See* OMC § 5.19.060(B).) These UDCB's can be easily monitored on a daily basis by the operator, which supports the Ordinance's goal to limit blight caused by UDCB's. Such UDCB's are still subject to all other requirements except for the geographical restrictions set forth in OMC Section 5.19.120 (A), (B) and (C). (Miller Decl. ¶ 12.)

There is nothing in the Ordinance that would prevent Plaintiff from operating a UDCB that is exempt from the application requirements under OMC Section 5.19.060(B) or the geographical restrictions set forth in OMC Section 5.19.120 (A), (B) and (C), if Plaintiff otherwise meets the requirements of UDCB regulations. (Miller Decl. ¶ 13.)

The Ordinance contains a provision, which extends Emergency Ordinance 13225 C.M.S. until April 22, 2016 – the duration permitted by Government Code 65858 – and effectively temporarily revives the moratorium on the placement or installation of UDCB's within the City in the event that the Ordinance is enjoined by a court of competent jurisdiction. (*See* Ord. 13335 C.M.S., Section 13.)

## III.

## <u>LEGAL STANDARD</u>

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir.2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.' ") (citation omitted) (emphasis in original).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, an injunction can issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," provided that "plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011) (citation and internal quotation marks omitted). Showing "serious questions going to the merits" requires more than establishing that "success is more likely than not;" rather, it requires a plaintiff to demonstrate a "substantial case for relief on the merits." *Leiva–Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011). Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

In addition, Federal Rule of Civil Procedure 65(b)(1) states that the court may issue a temporary restraining order without notice only if: "A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

## IV.

## ARGUMENT

### A. Plaintiff's Motion Should Be Denied Because it Cannot Show Immediate and Irreparable Harm.

Plaintiff's Motion should be denied because it cannot meet its burden to establish immediate and irreparable harm in the absence of preliminary relief. *Cf. Winter*, 555 U.S. at 20; FED. R. CIV. PROC. 65(b)(1). As set forth in the text of the Ordinance, the new regulations on UDCB's will not take effect until 90 days after final passage, on January 18, 2016, and Plaintiff has up to 120 days from final passage, until February 17, 2016, before the City actually removes

noncompliant UDCB's. (*See* Ord. 13335 C.M.S., Section 5(b)-(c); Miller Decl. ¶¶ 8-9.) Likewise, although UDCB owners may begin to submit their applications for permits for their UDCB's as early as 30 days after final passage, or November 19, 2015, there is no greater benefit to the UDCB owner for doing so, and UDCB owners that wait until the 90-day deadline will not suffer any prejudice or be in a worse position based on the later filing of their application. (Miller Decl. ¶¶ 8-9) In other words, there is no imminent threat of irreparable harm to Plaintiff that prevents the Court from adjudicating this matter by a motion for preliminary injunction. A TRO is an "extraordinary and drastic remedy," and Plaintiff's failure to make the requisite showing of irreparable harm is fatal to the Motion. *Lopez,* 680 F.3d at 1072.

### B. <u>**The City Will Suffer Great Prejudice If the Court Grants a TRO, Thus the Balance of Equities Does Not Tip in Plaintiff's Favor.**</u>

Unlike Plaintiff, who will not suffer any harm if this matter is set for hearing on a motion for a preliminary injunction, the City will be greatly prejudiced if it is forced to defend the TRO now. Due to the short notice period, the City had barely two business days to prepare a response to this Motion. (*See, e.g.* 3:15-cv-05093 Certificate of Service [Doc. No. 14] *filed* Nov. 16, 2015].) The Motion raises important issues of constitutional law, and the City should be entitled to fully brief those issues. Moreover, Plaintiff not only seeks to enjoin the enforcement of the Ordinance, but also to override the automatic moratorium provision that the City thoughtfully included in the event that a court enjoined the Ordinance. (*See* Ord. 13335 C.M.S., Section 13; Motion at 6, 8.)

Pursuant to the authority granted by Government Code section 65858, the City Council has had a moratorium on the placement or installation of UDCB's in effect by Emergency Ordinance since April 22, 2014. (Miller Decl. ¶¶ 4-6.) The purpose of the moratorium was to avoid a proliferation of new UDCB's that conflicted with the forthcoming regulations that Planning staff were working to prepare. (*See e.g.* Miller Decl. ¶ 5, Exh. D at p 1.)

The automatic revival of the moratorium on UDCB's serves to preserve the status quo: to avoid placement or installation of new UDCB's, which conflict with the City's UDCB

regulations, while the legality of the regulations is established in Court. Dissolving the automatic moratorium on UDCB's before the City has the chance to properly defend the new regulations may result in further blight and enforcement issues. (Miller Decl. ¶ 10.) In all events, by asking the Court to enjoin the automatic moratorium provision, Plaintiff is not seeking to preserve the status quo, but rather is trying to put itself in a better position than it was before the Ordinance passed on October 20, 2015. Denying the City the chance to apply the moratorium on UDCB's while this matter is litigated would further unfairly prejudice the City, but would not put the Plaintiff in any worse position than it was before the enactment of the Ordinance. For these reasons, the balance of equities does not tip in Plaintiff's favor. The Motion should be denied.

### C. Plaintiff is Not Likely to Succeed on the Merits.

The City does not dispute that the operation of UDCB's are a form of protected speech, and a total ban on UDCB's would likely be subject to strict scrutiny. *See, e.g. National Federation of the Blind Texas, Inc. v. Abbott*, 647 F.3d 202, 213 (5th Cir. 2011) (finding that "donation bins' solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues."); *Planet Aid v. Ypsilanti Township*, 26 F. Supp. 3d 683, 688-89 (E.D. Mich. 2014) (applying the reasonable time-place-and-manner test instead of strict scrutiny to the ordinance where UDCB ordinance was not a complete ban on UDCB's). However, the mere fact that a government regulation may incidentally impact some protected speech does not automatically trigger strict scrutiny. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Indeed, it is well established that municipalities are allowed to place direct limitations on protected free speech activity. *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633 (1980) (noting the issue was not whether charitable solicitations were within the protections of the First Amendment, but rather whether the Village had properly exercised its power to regulate charitable solicitation in such a manner as to not *unduly* intrude upon the rights of free speech.)

In *Planet Aid v. City of St. Johns*, 782 F.3d 318 (6th Cir. 2015) the court held that an ordinance banning charitable donation bins was content-based because it regulated only unattended, outdoor receptacles displaying expressive messages related to charitable donations, rather than all unattended outdoor receptacles. *Id.* at 328. The court concluded that the ordinance was not unrelated to the boxes' message, and applied strict scrutiny to uphold the trial court's ruling that the plaintiff was likely to succeed on the merits and order granting a preliminary injunction. *Id.* at 330-31.

By contrast, the Ordinance at issue here is not a total ban on UDCB's. Moreover, it is a content neutral regulation that reaches all UDCB owners, regardless of for profit or non-profit status, and without reference to any message promoted or cause supported by the organization. (*See* Ord. 13335 C.M.S.; Miller Decl. ¶ 11.) Accordingly, unlike *Planet Aid v. City of St. Johns*, 782 F.3d 318 (6th Cir. 2015), the Ordinance should not be subject to strict scrutiny, but rather the reasonable time-place-and-manner test should apply and thus, Plaintiff's motion denied. *See Planet Aid v. Ypsilanti Township*, 26 F. Supp. 3d at 688-89 (denying Planet Aid's motion for preliminary injunction because Plaintiff was not likely to succeed on the merits where UDCB ordinance was not a complete ban on UDCB's, and applying the reasonable time-place-and-manner test instead of strict scrutiny to the ordinance).

Even if strict scrutiny applied, however, the City should nevertheless prevail. To survive strict scrutiny, the regulation "must be narrowly tailored to promote a compelling Government interest…if a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000). In this case, the City has determined that UDCB's require specific regulations to address certain adverse effects on the public health, safety and welfare, including public nuisance issues such as illegal dumping, scavenging and graffiti. The Ordinance in this case thus addresses these compelling government interests in a manner that is narrowly tailored since it does not ban UDCB's, but rather establishes reasonable regulations that govern the placement and maintenance of UDCB's without distinguishing between commercial and charitable UDCB owners, or any particular message or cause that any such owner might promote.

Contrary to Plaintiff's contention, the Ordinance does not favor "local" charities. Rather it exempts from the application requirements and certain geographical restrictions, UDCB's in which the owner operates a related business at the same locale. (Miller Decl. ¶ 12.) The rationale behind the carve out is that such UDCB's can be easily monitored on a daily basis by the operator, which supports the Ordinance's goal to limit blight caused by UDCB's. (*Id.*) There is nothing in the Ordinance that would prevent Plaintiff from operating a UDCB that is exempt from the application requirements under OMC Section 5.19.060(B) or geographical restrictions set forth in OMC Section 5.19.120 (A), (B) and (C), if Plaintiff otherwise met the requirements of the UDCB regulations. (Miller Decl. ¶ 13.)

Accordingly, the regulations apply equally to all UDCB owners. For example, if the Salvation Army owned a stand-alone UDCB, it would be subject to the same restrictions as Plaintiff in this case. Likewise, if Plaintiff opened a brick and mortar donation store, and also operated a UDCB outside of the building but on the same site, that UDCB would be exempt from the application requirements under OMC Section 5.19.060(B) and the geographical restrictions set forth in OMC Section 5.19.120 (A), (B) and (C).

Plaintiff also takes issue with what it perceives as inconsistent treatment between UDCB's and other receptacles, such as garbage bins. However, the City specifically studied other box/container-type facilities and their applicable regulations, and determined that those regulations were either not appropriate or insufficient for UDCB's, and further, that UDCB's required their own regulations. (Miller Decl. ¶ 2 & Exh. A at p. 2-3.) As is clear by the staff reports attached to the concurrently filed Declaration of Scott Miller, Planning staff spent a tremendous amount of time and effort carefully researching and drafting proposed UDCB regulations for the City Council's review and consideration. (Miller Decl. ¶¶ 2, 4-6 & Exhs. A, B, D & F.) The Ordinance was carefully and thoughtfully drafted, and should be narrowly tailored enough to pass constitutional muster, even under strict scrutiny. In sum, Plaintiff is not likely to succeed on the merits. Plaintiff's Motion should be denied.

## V.

## CONCLUSION

For the foregoing reasons, Defendant City of Oakland respectfully requests that the Court deny Plaintiff's Motion for a Temporary Restraining Order and set this matter for hearing on a Preliminary Injunction with a briefing schedule consistent with the Federal Rules of Civil Procedure.

DATED: November 17, 2015

**OFFICE OF THE CITY ATTORNEY**
BARBARA J. PARKER
OTIS MCGEE, JR.
ARLENE M. ROSEN
SELIA M. WARREN

By: /s/ Selia M. Warren
Selia M. Warren
Attorneys for Defendant CITY OF OAKLAND