BARBARA J. PARKER, CITY ATTORNEY, SBN 069722
OTIS MCGEE, JR., CHIEF ASSISTANT CITY ATTORNEY, SBN 071885
JAMES F. HODGKINS, SENIOR DEPUTY CITY ATTORNEY, SBN 142561
SELIA M. WARREN, DEPUTY CITY ATTORNEY, SBN 233877
**OFFICE OF THE CITY ATTORNEY**
1 Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612

Telephone: (510) 238-6524
Facsimile: (510) 238-6500
Email: swarren@oaklandcityattorney.org

Attorneys for Defendant
CITY OF OAKLAND
X04204/1820338

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

RECYCLE FOR CHANGE,
Plaintiff,

v.

CITY OF OAKLAND, a California Municipal Corporation,

Defendant.

Case No. 3:15-cv-05093-WHO

**DEFENDANT CITY OF OAKLAND'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**[CONCURRENTLY FILED WITH DECLARATION OF SCOTT MILLER IN SUPPORT THEREOF]**

**L.R. 7-1(b) REQUEST FOR ORAL ARGUMENT**

DATE: January 13, 2016
TIME: 2:00 p.m.
CTRM: 2, 17th Floor

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 3
III. LEGAL STANDARD .......... 6
IV. ARGUMENT .......... 7
A. Plaintiff Is Not Likely to Succeed on the Merits: The Ordinance Does Not Violate the First Amendment. .......... 7
1. The Ordinance Should Be Evaluated Under the Reasonable Time, Place and Manner Test. .......... 7
2. The Ordinance is a Reasonable Time, Place or Manner Restriction. .......... 9
(a) The Ordinance is Content-Neutral. .......... 9
(b) The Ordinance Leaves Open Ample Means of Communication. .......... 15
(c) Even if the Ordinance is Deemed Content-Based it is a Valid Regulation. .......... 18
3. The Permit Requirement and Fees Do Not Violate the First Amendment. .......... 20
4. The Distinction Between Organizations With Brick and Mortar Storefronts and Those Without Is Not a Constitutional Violation. .......... 22
B. The Remaining Factors Do Not Support Plaintiff's Motion. .......... 23
1. Plaintiff Is Not Likely to Suffer Irreparable Harm. .......... 23
2. The Balance of Equities Do Not Tip in Plaintiff's Favor; A Preliminary Injunction Is Not in the Public's Interest. .......... 23
C. The Court Should Not Enjoin the Moratorium. .......... 24
V. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

## CASES

*A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006) ---------- 10

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ---------- 7

*Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241 (10th Cir. 2000) ---------- 21

*Bay Area Peace Navy v. United States*, 914 F.2d 1224 (9th Cir. 1990) ---------- 15

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) ---------- 8, 10, 15

*Boos v. Barry*, 485 U.S. 312 (1988) ---------- 19

*Chicago v. Mosley*, 408 U.S. 92 (1972) ---------- 13

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) ---------- 19

*City of Corona v. Naulis*, 166 Cal. App. 4th 418 (2008) ---------- 25

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) ---------- 2, 8, 16

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988) ---------- 20

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) ---------- passim

*Contest Promotions, LLC v. City & Cty. of San Francisco*, 2015 WL 4571564 (N.D. Cal. July 28, 2015) ---------- 10

*County of Sonoma v. Superior Court*, 190 Cal. App. 4th 1312 (2010) ---------- 25

*Crawford v. Lungren*, 96 F.3d 380 (9th Cir. 1996) ---------- 13, 18

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780 (9th Cir. 2008) ---------- 19

*Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474 (6th Cir. 1995) ---------- 22

*Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814 (9th Cir. 1996) ---------- 10

*Earth Island Inst. v. Carlton*, 626 F.3d 462 (9th Cir. 2010) ---------- 7, 24

*Ebel v. City of Corona*, 698 F.2d 390 (9th Cir. 1983) ---------- 11

*G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064 (9th Cir. 2006) ---------- 10

*Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886 (9th Cir. 2007) ---------- 20

*Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981) ---------- 15

*Leiva–Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ---------- 7

*Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009) ---------- 9

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012)---------- 7

*Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976) ---------- 23

*Members of the City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ---------- 14, 20

*Mercer Outdoor Advert., LLC v. City of Hermitage, Pa.*, 2014 WL 3735637 (W.D. Pa. July 28, 2014)---------- 9

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) ----------2, 10, 14

*Murdock v. Pennsylvania*, 319 U.S. 105 (1943) ---------- 21

*National Federation of the Blind Texas, Inc. v. Abbott*, 647 F.3d 202 (5th Cir. 2011) ---------- 8

*One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009 (9th Cir.1996) ---------- 20

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978) ---------- 2, 14

*Planet Aid v. City of St. Johns*, 782 F.3d 318 (6th Cir. 2015)----------1, 8, 10, 13

*Planet Aid v. Ypsilanti Township*, 26 F. Supp. 3d 683 (E.D. Mich. 2014) ---------- 9, 23

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015)----------10, 11, 19, 23

*San Francisco Apartment Ass'n v. City & Cty. of San Francisco*, 2015 WL 6747489 (N.D. Cal. Nov. 5, 2015) ------- 21

*Stott Outdoor Advert. v. Cty. of Monterey*, 601 F. Supp. 2d 1143 (N.D. Cal. 2009) ---------- 12

*Taxpayers for Vincent v. Members of City Council*, 682 F.2d 847 (9th Cir.1982) ----------14, 15, 17, 20

*Turner Broad. Sys., Inc. v. Federal Communications Comm'n*, 512 U.S. 622 (1994) ---------- 9

*United States v. O'Brien*, 391 U.S. 367 (1968)---------- 11, 13

*Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) ---------- 8

*Vosse v. The City of New York*, 2015 WL 7280226 (S.D.N.Y. Nov. 18, 2015)----------2, 14, 16

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ----------passim

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ---------- 1, 7, 24

*Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50 (1976)----------passim

## STATUTES

Government Code section 65858 ---------- 3, 6, 24

## REGULATIONS

Emergency Ordinance No. 13225 C.M.S. ---------- 3, 6, 24

Emergency Ordinance No. 13232 C.M.S. ---------- 3

Emergency Ordinance No. 13295 C.M.S. ---------- 3
Oakland Municipal Code ("OMC") §5.19---------- 1
Oakland Planning Code ("OPC") § 17.10586A ---------- 4, 13
OMC § 5.19.010 ---------- 12
OMC § 5.19.060(B) ---------- 6, 22
OMC § 5.19.100 ---------- 21
OMC § 5.19.110 ---------- 21, 23
OMC § 5.19.120(H) ---------- 5
OMC § 8.128.140---------- 4
OMC § 8.24.020 ---------- 4
OMC Section 5.19.120---------- 6, 22
OPC § 17.09.040---------- 4, 13
OPC § 17.124.045 ---------- 4, 13
Ordinance No. 13335 C.M.S. ----------passim

Defendant City of Oakland (the "City") hereby respectfully submits this opposition ("Opposition") to Plaintiff Recycle for Change ("Plaintiff")'s Motion for a Preliminary Injunction ("Motion").

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On October 20, 2015, the City Council unanimously adopted Ordinance No. 13335 C.M.S. (the "Ordinance") to regulate unattended donation and collection boxes ("UDCBs") within City limits. The Ordinance established reasonable time, place and manner regulations for the placement, appearance, operation and maintenance of UDCBs. (*See* Oakland Municipal Code ("OMC") §5.19.) (Declaration of Scott Miller ("Miller Decl.") ¶ 2 & Exh. A (Ordinance).) By this Motion, Plaintiff asks the Court to preliminarily enjoin the enforcement of the Ordinance, primarily on the ground that it violates Plaintiff's First Amendment rights guaranteed by the United States Constitution. (Mot. at 14-15.) A preliminary injunction is "an extraordinary remedy that may only be awarded" where Plaintiff has made a "*clear showing* that [] Plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added). The Court should deny the Motion because Plaintiff has not made a "clear showing" that it is entitled to a preliminary injunction. *Id.* Specifically, 1) Plaintiff has not met its burden to show Plaintiff is likely to succeed on the merits; 2) Plaintiff will not suffer irreparable harm; 3) the balance of equities does not tip in Plaintiff's favor; and 4) a preliminary injunction is not in the public interest. *Id.* at 20.

Municipalities throughout the country have begun to recognize that UDCBs require specific regulations due to their unique set of secondary impacts, which adversely affect the public health, safety and/or welfare. Since UDCBs are unmonitored, but publically accessible 24 hours a day, they attract nuisance issues such as illegal dumping, scavenging and graffiti, among other issues. Courts have also begun to recognize that certain types of UDCBs contain expressive components and are entitled to First Amendment protection. *See, e.g. Planet Aid v. City of St. Johns*, 782 F.3d 318, 326 (6th Cir. 2015) ("*St. Johns*"). Balancing these and many other factors, the Ordinance at issue here establishes basic time, place and manner requirements for non-

expressive components of UDCBs (the placement, appearance, operation and maintenance of UDCBs) regardless of the charitable or for-profit purpose and without regard to the particular message expressed or cause supported, if any. "It is common ground that governments may regulate the physical characteristics of signs…" notwithstanding the fact that they are also "a form of expression protected by the Free Speech Clause [of the First Amendment]." *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994). Moreover, the mere fact that a government regulation may *incidentally* impact some protected speech does not automatically trigger strict scrutiny. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *St. Johns*, 782 F.3d at 326 (noting conclusion that donation bins are entitled to "strong constitutional protection" is the "beginning of [the] inquiry not the end of it".) Importantly, the Ordinance potentially preserves more than 90% of the total number of UDCBs currently in the City, and should only result in a net loss of no more than 15 UDCBs.[1] (Miller Decl. ¶ 3.) Where, as here, the Ordinance does not totally ban UDCBs, but rather places only reasonable time, place and manner restrictions that are narrowly tailored to address the City's substantial interests,[2] the Ordinance does not run afoul of any constitutional rights. For these reasons, and as set forth in more detail below, Plaintiff's Motion should be denied.

---

[1] The City estimates that, as of 2014, there were 152 UDCBs in the City. (Miller Decl. ¶ 3.) After applying the distance separation and zoning requirements, 30 UDCBs will remain in permissible zones. (*Id.*) However, the City conservatively estimates that it can accommodate 107 new UDCBs that comply with the distance separation and zoning requirements of the Ordinance. (*Id.*) Thus, the Ordinance will result in opportunity for the placement of at least 137 UDCBs, which amounts to only 15 fewer boxes than what existed as of 2014. (*Id.*) Moreover, Plaintiff admits that it has lost additional UDCBs due to natural turnover. (*Id.*) The Ordinance therefore potentially preserves more than 90% of the current total number of UDCBs, albeit not in the locations in which they currently exist. (*Id.*) The First Amendment, however, does not guarantee Plaintiff the right to place UDCBs in any particular location. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54-55 (1986) (finding that city had "sought to make *some areas* available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by *preventing those theaters from locating in other areas*," which "satisf[ied] the dictates of the First Amendment." "**This, after all, is the essence of zoning**.") (emphasis added).

[2] "Indeed, it is well-established that preserving and advancing the aesthetics of a city constitutes a 'substantial governmental goal[ ].'" *Vosse v. The City of New York*, No. 12 CIV. 8004 (JSR), 2015 WL 7280226, at *2 (S.D.N.Y. Nov. 18, 2015) (*quoting Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981) (plurality opinion)); *see also Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 71 (1976) ("[T]he city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect."); *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 129 (1978) ("[T]his Court has recognized, in a number of settings, that States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city.").

## II. FACTUAL BACKGROUND

UDCBs are unstaffed drop-off boxes, typically up to seven feet in width and height, which accept clothing, textiles, books and other items to be used by the operator for distribution, resale, or recycling. (Miller Decl. ¶ 4.) Since 2008, non-profit and for-profit organizations have placed UDCBs at a variety of places within the City, including, among other places, at schools, grocery stores, gas stations, in parking lots and near businesses. (*Id.*) On May 8, 2012, the City Council's Community and Economic Development Committee directed the Department of Planning and Building staff to develop regulations for the placement and maintenance of UDCBs. (*Id.* ¶¶ 5-6 & Exh. B at p. 3.) Notwithstanding that direction, due to staffing limitations and changes in leadership within the Planning and Building Department, staff was not able to prepare any draft regulations, and the issue became dormant until 2014. (*Id.* ¶ 5.)

On April 22, 2014, pursuant to Government Code section 65858, the City Council adopted Emergency Ordinance No. 13225 C.M.S., which established a temporary 45-day moratorium on the placement of new UDCBs within the City. (*Id.* ¶ 7 & Exhs. C-D.) The City Council also directed staff to return with a permanent set of regulations to be presented to the City Council. (*Id.*) Pursuant to Government Code section 65858, the City Council subsequently extended the moratorium twice, to March 3, 2015, and ultimately to December 31, 2015. (*Id.* ¶¶ 8-9 & Exhs. E (Emergency Ordinance No. 13232 C.M.S., *adopted* June 3, 2014), G (Emergency Ordinance No. 13295 C.M.S., *adopted* Feb. 15, 2015).) Prior to 2014, the City had never expressly regulated UDCBs. (*Id.* ¶ 7.)

Numerous local governments in California and throughout the United States have concluded that UDCBs require specific regulations due to their unique set of secondary impacts, which adversely affect the public health, safety and/or welfare. (*Id.* ¶ 10.) For example, since UDCBs are publically accessible but unmonitored, they attract public nuisance issues such as illegal dumping, scavenging and graffiti, among other issues. (*Id.*) Likewise, UDCBs have also been placed in parking spaces or otherwise in vehicle maneuvering areas, which affect vehicle and pedestrian safety. (*Id.* ¶¶ 6, 10, Exhs. B (*9/14/15 Agenda Report* at p. 2); Exh. I (photos of UDCBs).)

Between 2014 and 2015, City staff conducted exhaustive analysis and produced numerous proposals and subsequent revisions before the Ordinance was finalized. (*Id.* ¶ 11.) Among other things:

- Staff evaluated existing regulations for other box/container-type facilities and receptacles, and determined that those regulations were either inappropriate or insufficient for UDCBs.[3] (*Id.*)
- Staff conducted a fee analysis study to determine an appropriate basis for fees such that the fee does not exceed the reasonable cost of providing the service (i.e., processing the application). In doing so, the staff also compared the fees for UDCBs in other jurisdictions and determined that the City's proposed fees were reasonable and comparable.[4] (*Id.*)

---

[3] Specifically, the City evaluated regulations for satellite recycling collection centers ("SRCCs") (Oakland Planning Code ("OPC") § 17.10586A)); detached accessory structures (OPC § 17.09.040); trash and recycling receptacles (OPC § 17.124.045; OMC §§ 8.128.140, 8.24.020); and construction and demolition debris containers. (Miller Decl. ¶¶ 6, 11 n. 1, Exh. B (*9/14/15 Agenda Report* at p. 2-3).) SRCCs facilities are a maximum of 500 square feet, and accept recyclable non-hazardous materials from the public by donation, redemption or purchase. (*Id.*) SRCCs are commonly found in grocery store parking lots. (*Id.*) They are not permitted in residential zones or most commercial zones and are conditionally permitted in industrial zones. (*Id.*) SRCCs thus require a minor conditional use permit, and are subject to more stringent conditions and discretionary approvals than UDCBs because they tend to service larger loads of materials, require larger vehicles and have greater impacts in terms of noise and odors. (*Id.*)

Detached accessory structures, such as garages and storage structures, are intended for personal use and are necessarily tied to a principle activity (and thus not "unattended"). (*Id.*) Unlike UDCBs, which are by definition, not associated with a principle activity, but rather are standalone unattended boxes intended for use by the public, accessory structures do not create substantial secondary impacts (i.e. blight and illegal dumping). (*Id.*) Trash and recycling receptacles are also, by definition, not intended for public use, and must be stored away from public areas outside of the scheduled day for pick up. (*Id.*) Construction and demolition debris containers are temporary facilities tied to active construction sites, are not intended for use by the general public, and are not generally subject to blight issues since workers monitor their sites. (*Id.*)

[4] In setting the fees, City staff conducted a detailed analysis and calculations to determine the appropriate fees for UDCBs. (Miller Decl. ¶ 11 n. 2.) The initial application and renewal fees, $535.31 and $245.72, respectively, are based on the City's own cost structure, and estimated time requirements for City staff to complete processing of the application, and site inspections. (*Id.*) The amount of staff hours required is comparable to that which is required for Small Project Design Review. (*Id.*; *Id.* ¶ 6, Exh. B (*1/12/15 Agenda Report* at p. 4).) In addition, the City looked at what eight other California jurisdictions charge for UDCB permits, including the cities of Berkeley, Elk Grove, Gardena, Sacramento, San Pablo and Torrance; and the counties of Alameda and Sacramento. (*Id.*) The fees for an initial application range from $132 to $3,742, with a mean fee of $1,072.59 and a median fee of $676, including the City's initial application fee. (*Id.; See also* Exh. B (Attachment C to *1/12/15 Agenda Report*).) Thus, the City's fees appeared to be well with a reasonable range of what other jurisdictions charged. (*Id.*)

- Staff studied existing regulations as well as separation requirements for UDCBs in other jurisdictions to determine what the appropriate distance should be between UDCBs.[5] Ultimately, staff determined that 1,000 feet was an appropriate distance. (*Id.*)
- Staff studied what zones would be appropriate for UDCBs to minimize blight and other secondary impacts on residents while supporting the City's zero-waste initiatives to provide a way for residents to recycle goods rather than place them in the waste stream.[6] (*Id.* ¶¶ 6, 11, Exh. B. (*2/25/14 Agenda Report* at p. 2).) After considering many options, Staff ultimately recommended allowing UDCBs in most commercial and all industrial zones. (*Id.* ¶ 11.)
- The City also invited stakeholders to review and comment on proposed drafts of the Ordinance. UDCB operators such as Plaintiff, and USAgain, a self-described "for profit collection box operator," who together make up the majority of UDCBs in the City, provided such comment.[7] (*Id.*)

On October 20, 2015, the City Council unanimously adopted Ordinance No. 13335 C.M.S. (the "Ordinance") to regulate UDCBs within City limits. (Miller Decl. ¶ 2 & Exh. A.) Among

---

[5] Requiring a specific distance between similarly regulated activities is a common land use/planning tool for activities that are associated with secondary impacts such as blight, and other nuisances. (Miller Decl. ¶ 11 n. 3.) In this case, the City found that the concentration of UDCBs in one area exacerbated the illegal dumping and trash issues. (*Id.; Id* ¶ 6, Exh. B (*1/12/15 Agenda Report* at p. 5).) UDCBs promote recycling of used goods, thereby avoiding entrance into waste streams. (*Id.*) In light of these and other policy considerations, staff determined that 1,000 feet (about three and a half city blocks), was an appropriate distance between each UDCB, since facilities would be within easy walking distance of each other, but still clearly separate and distinct. (*Id.*) Staff determined that the separation requirement is comparable to other regulations, which range from 300 to 2,500 feet. (*Id.*) Staff also studied the distance requirements for UDCBs in other jurisdictions, which range from 400 to 2,500 feet, and thus found the City's 1,000 foot separation requirement to be reasonable and comparable to other jurisdictions. (*Id.*)

[6] Like separation requirements, zone limitations are a common land use/planning tool. (Miller Decl. ¶ 11 n. 4.)

[7] For example, in 2014, Plaintiff lobbied for the right to have more than one UDCB per parcel where the location's high yield justified it, and complained about the high permit fees, then $1,250.52 and $450.97 for initial and renewal applications, respectively. (Miller Decl. ¶ 11 n. 5.) At various times, the proposed separation requirement between UDCBs was between 1,500 and 2,500 feet, proposals to which Plaintiff voiced strong objections. (*Id.*) The final regulations allow for a second UDCB on a parcel by the same operator. (OMC § 5.19.120(H) (noting that no fee is required for the second bin); Miller Decl. ¶ 11 n. 5.) The fee schedule is also lower than proposed in 2014: $535.51 and $245.72 for initial and renewal applications, respectively and the final regulations also lowered the distance separation requirement for UDCBs to 1,000 feet. (*Id.*)

other things, the Ordinance established Chapter 5.19, a new chapter in the Oakland Municipal Code ("OMC"), which contains regulations for the placement, appearance, operation and maintenance of UDCBs. (*Id.*)

The Ordinance regulates all UDCBs. Except for identification purposes and appropriate registration, the Ordinance regulates all UDCBs in the same manner, regardless of whether the owner is a non-profit or a for-profit entity. Likewise, the Ordinance does not distinguish between the causes supported or the particular message promoted by the UDCB operator. (*Id.* ¶ 12.)

UDCBs that are on the same lot or that are enclosed within an occupied principal building on property owned or leased by the UDCB operator are not required to submit a permit application. (*See* OMC § 5.19.060(B).) These UDCBs are not truly "unattended" and thus, can be easily monitored on a daily basis by the operator, which supports the Ordinance's goal to limit blight caused by UDCBs. (Miller Decl. ¶ 13.) Such UDCBs are still subject to all other requirements except for the geographical restrictions set forth in OMC Section 5.19.120 (A), (B) and (C). (*Id.*)

There is nothing in the Ordinance that would prevent Plaintiff from operating a UDCB that is exempt from the application requirements under OMC Section 5.19.060(B) or the geographical restrictions set forth in OMC Section 5.19.120 (A), (B) and (C), if Plaintiff otherwise meets the requirements of Ordinance. (Miller Decl. ¶ 14.)

The Ordinance contains a provision, which extends Emergency Ordinance No. 13225 C.M.S. until April 22, 2016 – the duration permitted by Government Code section 65858 – and effectively <u>temporarily</u> revives the moratorium on the placement or installation of UDCBs within the City in the event that the Ordinance is <u>enjoined</u> by a court of competent jurisdiction. (Ordinance No. 13335 C.M.S., § 13.) The purpose of this provision is to avoid a proliferation of non-compliant UDCBs, while the legality of the Ordinance is established in court. (Miller Decl. ¶ 15.)

## III. LEGAL STANDARD

A preliminary injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

*Winter*, 555 U.S. at 22; *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.' ") (citation omitted) (emphasis in original).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, an injunction can issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," provided that "plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011) (citation and internal quotation marks omitted). Showing "serious questions going to the merits" requires more than establishing that "success is more likely than not;" rather, it requires a plaintiff to demonstrate a "substantial case for relief on the merits." *Leiva–Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011). Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

## IV. ARGUMENT

### A. Plaintiff Is Not Likely to Succeed on the Merits: The Ordinance Does Not Violate the First Amendment.

Plaintiff's Motion should be denied because it cannot meet its burden to show a likelihood of success on the merits. The Ordinance is a reasonable regulation governing the time, place and manner of speech, and as such, does not violate Plaintiff's First Amendment rights.

#### 1. The Ordinance Should Be Evaluated Under the Reasonable Time, Place and Manner Test.

The Ordinance establishes basic requirements for the placement, appearance, operation and maintenance of UDCBs, regardless of the charitable or for-profit purpose, and without

regard to the particular message expressed or cause supported, if any. The City does not dispute that the charitable solicitation through donation bins are a form of protected speech, and a total ban on UDCBs would likely be subject to strict scrutiny. *See, e.g. National Federation of the Blind Texas, Inc. v. Abbott*, 647 F.3d 202, 213 (5th Cir. 2011) (finding that charitable "donation bins' solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues."); *St. Johns*, 782 F.3d at 329-31 (holding that ordinance that banned all charitable donation bins was content-based and therefore subject to strict scrutiny). However, "[i]t is [also] common ground that governments may regulate the physical characteristics of signs…" notwithstanding the fact that they are also "a form of expression protected by the Free Speech Clause [of the First Amendment]." *City of Ladue*, 512 U.S. at 48 (noting that signs "pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.")

Indeed, it is well established that municipalities are allowed to place direct limitations on protected free speech activity. *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633 (1980) (noting the issue was not whether charitable solicitations were within the protections of the First Amendment, but rather whether the Village had properly exercised its power to regulate charitable solicitation in such a manner as to not *unduly* intrude upon the rights of free speech.) Accordingly, a municipality may issue reasonable regulations governing time, place or manner of speech, even if the speech is subject to First Amendment protections. *Berger v. City of Seattle*, 569 F.3d 1029, 1035-36 (9th Cir. 2009) (en banc) (noting that even "certain restrictions on speech in public parks [where First Amendment protections are strongest] are valid. Specifically, a municipality may issue reasonable regulations governing the time, place or manner of speech.").

The mere fact that a government regulation may *incidentally* impact some protected speech, however, does not automatically trigger strict scrutiny. *Ward*, 491 U.S. at 791; *St. Johns*, 782 F.3d at 326 (noting conclusion that donation bins are entitled to "strong constitutional

protection" is the "beginning of [the] inquiry not the end of it".). Content neutral regulation of protected speech is subject to "an intermediate level of scrutiny." *Turner Broad. Sys., Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 642 (1994). Where, as here, the Ordinance does not ban, but rather only regulates non-expressive components of UDCBs, the reasonable time, place and manner test should apply.[8] *Planet Aid v. Ypsilanti Township* ("*Ypsi*"), 26 F. Supp. 3d 683, 688-89 (E.D. Mich. 2014) (applying the reasonable time, place, and manner test instead of strict scrutiny to the ordinance where ordinance was not a complete ban on UDCBs).

**2. The Ordinance is a Reasonable Time, Place or Manner Restriction.**

To pass constitutional muster, a time, place, or manner restriction must meet three criteria: (1) it must be content-neutral; (2) it must be narrowly tailored to serve a significant governmental interest; and (3) it must leave open ample alternative channels for communication of the information. *Id.* at 1036 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (internal citations omitted).

**(a) The Ordinance is Content-Neutral.**

**1) The Ordinance Does Not Favor One Type of Speech Over Another.**

The Ordinance is content-neutral because it does not distinguish between the type of UDCB operator, whether non-profit or for profit, and it applies without regard to the particular message expressed or cause supported, if any. If a regulation "distinguish[es] favored speech from disfavored speech on the basis of the ideas or views expressed," it is content-based. *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1024 (9th Cir. 2009). Likewise, the

---

[8] Plaintiff contends that the Ordinance is a "de facto" total ban. Plaintiff is mistaken. The plain terms of the Ordinance allow for placement of UDCBs in specific areas of the City. *Ypsi*, 26 F.Supp.3d at 688 ("Ordinance limiting placement of donation bins within the Township *does not constitute a complete ban… .*") (emphasis added); *Mercer Outdoor Advert., LLC v. City of Hermitage, Pa.*, No. 2:14-CV-00561, 2014 WL 3735637, at *5 (W.D. Pa. July 28, 2014) *aff'd and remanded sub nom. Mercer Outdoor Advert., LLC v. City of Hermitage, Penn.*, 605 F. App'x 130 (3d Cir. 2015) *cert. denied sub nom. Mercer Outdoor Advert., LLC v. City of Hermitage, Pa.*, 136 S. Ct. 169 (2015) (rejecting plaintiff's proposed interpretation that city's zoning ordinance constituted "an impermissible de facto ban" on billboards where the plain language of the ordinance allowed billboards in certain places; such an interpretation violated the basic rules of legal construction). The Ordinance does not constitute a total ban on UDCBs and is thus properly analyzed as a time, place, and manner regulation. *Renton*, 475 U.S. at 46 (finding that ordinance that prohibited adult theaters within 1,000 feet of certain types of residential zones, family dwellings, churches, parks or schools, but did not ban them outright was "therefore properly analyzed as a form or time, place, and manner regulation.") Plaintiff's argument that the Ordinance is a total ban should be disregarded.

Ordinance does not completely ban UDCBs, which would also render it content-based. *St. Johns*, 782 F.3d at 329-30 (observing that ordinance banned all donation bins, "an entire subclass of physical, outdoor objects–those with an expressive message protected by the First Amendment. ***That*** is why Ordinance #618 is content-based.") (emphasis added).); *Contest Promotions, LLC v. City & Cty. of San Francisco*, No. 15-CV-00093-SI, 2015 WL 4571564, at *3 (N.D. Cal. July 28, 2015) ("'The First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.") (citing *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2233 (2015)).

The Ordinance is content neutral on its face: It does not favor one type of speech over another. *Cf. Berger*, 569 F.3d at 1055 (noting that rule that favored concessionaires and licensees over those engaged in artistic and political speech "was cause enough" to invalidate it) (citing *Metromedia, Inc.*, 453 U.S. at 513); *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1081 (9th Cir. 2006) (ordinance invalid if it favors commercial speech over noncommercial speech); and *Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819-20 (9th Cir. 1996) (same)).

The fact that the Ordinance may regulate certain *conduct* incidental to the expressive components of UDCBs does not make it content-based. "[R]egulations that ban certain *conduct* associated with solicitation do not violate the prohibition on content-based regulation of speech. A ban on the actual hand-to-hand exchange of money, for example, is not content-based speech regulation." *Berger*, 569 F.3d at 1051 (but nevertheless finding rule at issue to be content-based because it specifically regulated speech, by specifying the medium and manner of requesting money – only in writing, and only passively.) Likewise, the Ordinance does not require that a City official review the expressive components of a UDCB to determine if it is subject to the Ordinance. *Cf. Berger*, 569 F.3d at 1052 ("Our conclusion that the active solicitation ban is content-based is supported – but not determined – by the fact that an officer seeking to enforce the [] ban must necessarily examine the content of the message that is conveyed."); *See also*, *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 795-96 (9th Cir. 2006) ("An ordinance is content-based if 'a law enforcement officer must read a [printed communication's] message to determine if

the [printed communication] is exempted from the ordinance.'") The expressive components of a UDCB have nothing to do with whether the Ordinance applies. The Ordinance is content-neutral.

**2) <u>The Legislative Purpose and Justification for the Ordinance is Content-Neutral.</u>**

Plaintiff contends that the legislative purpose of the Ordinance was to "reduc[e] competition from outsiders for recyclable materials in Oakland." (Mot. at 2.) Where legislation is facially content-neutral, the Court must then look to governmental motive, including "whether the government [] regulated speech because of disagreement with its message, and whether the regulation was justified without reference to the content of the speech." *Reed*, 135 S. Ct. at 2228-29 (citation omitted); *Ebel v. City of Corona*, 698 F.2d 390, 393 (9th Cir. 1983) (noting that if "the real purpose" of the ordinance was to "run her adult bookstore out of town" then the ordinance would violate the First Amendment as a purposeful attempt to suppress protected speech). However, the United States Supreme Court has declared that a "[i]t is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive....What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *United States v. O'Brien*, 391 U.S. 367, 382–384 (1968).

Likewise, in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), the United States Supreme Court reviewed a city ordinance limiting geographical placement of adult motion picture theatres within city limits. Although the District Court had found that the *predominant* concerns of the ordinance were with the secondary effects of adult theaters, and not with the content of adult films themselves, the Court of Appeals found that it was not enough to sustain the ordinance where a motivating factor in enacting the ordinance was to restrict respondents' exercise of First Amendment rights, "no matter how small a part this motivating factor may have played in the City Council's decision." *Id.* at 47-49. On review, the Supreme Court opined:

> The District Court's finding as to "predominant" intent, left undisturbed by the Court of Appeals, is more than adequate to establish that the city's pursuit of its zoning interests here was unrelated to the suppression of free expression. The ordinance by its terms is designed to prevent crime, protect the city's retail trade, maintain property values, and generally protect and preserve the quality of the

> city's neighborhoods, commercial districts, and the quality of urban life, not to suppress the expression of unpopular views. [] As Justice POWELL observed in *American Mini Theatres*, "[i]f [the city] had been concerned with restricting the message purveyed by adult theaters, it would have tried to close them or restrict their number rather than circumscribe their choice as to location." 427 U.S., at 82, n. 4.
>
> In short, the Renton ordinance is completely consistent with our definition of "content-neutral" speech regulations as those that "are *justified* without reference to the content of the regulated speech." [cite.] The ordinance does not contravene the fundamental principle that underlies our concern about "content-based" speech regulations: that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views."

*Id.* at 48-49 (finding that zoning ordinance that prohibited adult motion picture theaters from locating within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school did not violate First Amendment, such that District Court was correct in *denying* permanent injunction) (reversing Ninth Circuit judgment) (citations omitted).) Accordingly, "a constitutional concern arises only where the administrative body's 'sole purpose' in enacting the laws is to frustrate a particular person." *Stott Outdoor Advert. v. Cty. of Monterey*, 601 F. Supp. 2d 1143, 1152 (N.D. Cal. 2009); *also Renton*, 475 U.S. at 48 ("predominant intent").

Here, the purpose of the Ordinance is set forth in OMC § 5.19.010, which is to eliminate blight related issues associated with UDCBs.[9] While it is true that several *former* City Council members – who were no longer on the City Council when the matter was considered again 2014 nor when the Ordinance was adopted in October 2015 – expressed a desire to create legislation that favored local charities, the express terms of the Ordinance do not create any such imbalance, and Plaintiff cannot credibly argue that the "sole purpose" of the Ordinance was to target non-local charities. Moreover, a few statements of legislators cannot forever bar the City from

---

[9] OMC § 5.19.010 ("The purpose of these regulations is to promote the health, safety, and/or welfare of the public by providing minimum blight-related performance standards for the operation of [UDCBs]. This includes establishing criteria to ensure that material is not allowed to accumulate outside of the UDCBs, the UDCBs remain free of graffiti and blight, UDCBs are maintained in sanitary conditions, and residents and/or users are fully informed of those who operate the UDCBs so that they can be contacted if there are any blight-related questions or concerns."). (*See also*, Ordinance, § 4 (The City Council expressly finds and determines: (a) the sole purpose of this Ordinance is to promote the public health, safety and/or welfare by reducing and/or eliminating the secondary, nuisance-related conditions that have become associated with UDCBs in a content neutral manner, based upon reasonable time, place and manner restrictions; (b) this Ordinance is **not** intended to, nor does it operate to, discriminate against any particular viewpoint, content and/or UDCB operators/operations… .") (emphasis in original).)

imposing reasonable time, place and manner restrictions on UDCBs. Plaintiff has not cited any case law supporting such a principle and the City is not aware of any. Indeed, *O'Brien* and *Renton* would directly contradict such a finding. *See, e.g. O'Brien*, 391 U.S. at 382–384; and *Renton*, 475 U.S. at 47-49. Where, as here, the Ordinance is "justified without reference to the content of the regulated speech," the Ordinance should be deemed content-neutral. *Crawford v. Lungren*, 96 F.3d 380, 384-85 (9th Cir. 1996).[10]

**3) <u>That the Ordinance Does Not Apply to Other Box/Container Type Facilities Does Not Render It Content-Based.</u>**

Plaintiff contends that the fact that the Ordinance does not also apply to other receptacles renders the Ordinance content-based. In *St. Johns*, 782 F.3d 318, which involved a total ban of charitable donation bins, the Sixth Circuit found it problematic that the ban did not also apply to other similar receptacles. *Id.* at 328 331. However, it was the fact that the ordinance was a total ban, and not that the ordinance only applied to charitable donation bins that rendered the ordinance content based. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 329-30 (6th Cir. 2015) (observing that ordinance banned all charitable donation bins, "an entire subclass of physical, outdoor objects–those with an expressive message protected by the First Amendment. ***That*** is why Ordinance #618 is content-based.") (emphasis added)). Moreover, unlike *St. Johns*, the City specifically evaluated existing regulations for other types of boxes/receptacles, and determined that those regulations were either inappropriate or insufficient for UDCBs.[11] Thus, unlike *St. Johns*, where no evidence existed in the record to justify the different treatment of charitable solicitation bins, the record in this case contains ample evidence to support the City's need for different regulations for the various categories of boxes/receptacles.[12] The mere fact that the City

---

[10] Indeed, the Ordinance does not "contravene the fundamental principle that underlies [the United States Supreme Court's] concern about 'content-based' speech regulations: that 'government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views.'" *Renton*, 475 U.S. at 48-49 (citing *Chicago v. Mosley*, 408 U.S. 92, 95-96 (1972).) The Ordinance exhibits no such favoritism.

[11] *See* Note 3, *supra*. The City evaluated regulations for satellite recycling collection centers ("SRCCs") (OPC § 17.10586A)); detached accessory structures (OPC § 17.09.040); trash and recycling receptacles (OPC § 17.124.045; OMC §§ 8.128.140, 8.24.020); and construction and demolition debris containers. (Miller Decl. ¶¶ 6, 11, Exh. B (*9/14/15 Agenda Report* at p. 2-3).)

[12] These efforts, including the other analyses City staff conducted satisfy the City's burden of proof for justification of the Ordinance. *See, Renton*, 475 U.S. at 50 (overruling Court of Appeals determination that City

regulates these other categories differently based on its well-studied needs, which are also unrelated to speech, does not render the Ordinance content-based.

**4) <u>The Ordinance is Narrowly Tailored to the City's Significant Interests.</u>**

The Ordinance will be deemed narrowly tailored "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." Ward, 491 U.S. at 799 (citation omitted). Importantly, "it need not be the least restrictive or least intrusive means of doing so." *Id.*

As a preliminary matter, the City's interests in addressing the unique set of secondary impacts associated with UDCBs – illegal dumping, scavenging and graffiti, among other issues – are significant interests. "[I]t is well-settled that the state may legitimately exercise its police powers to advance esthetic values." *Members of the City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984) (citing *Berman v. Parker*, 348 U.S. 26, 32-33 (1954)). The United States Supreme Court has "rejected the notion that a city is powerless to protect its citizens from unwanted exposure to certain methods of expression which may legitimately be deemed a public nuisance." *Id.*, 466 U.S. at 805-06. Thus, preserving and advancing the aesthetics of a city constitutes a "substantial governmental goal[ ]." *Vosse v. The City of New York*, No. 12 CIV. 8004 (JSR), 2015 WL 7280226, at *2 (S.D.N.Y. Nov. 18, 2015) (citing *Metromedia, Inc.*, 453 U.S. at 507 (1981); *Am. Mini Theatres, Inc.*, 427 U.S. at 71 ("[T]he city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect."); *Penn Cent. Transp. Co.*, 438 U.S. at 129 ( "[T]his Court has recognized, in a number of settings, that States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city.").) The City's interests here: blight, illegal dumping, graffiti, traffic and pedestrian safety issues, constitute significant governmental interests.

The Ordinance is narrowly tailored to address these significant interests, and is directed at the non-expressive components of UDCBs. In *Taxpayers for Vincent v. Members of City Council,*

---

enacted ordinance "without the benefit of studies," City was entitled to rely on experience and studies of another city; "We think the Court of Appeals imposed on the city an unnecessarily rigid burden of proof.").

682 F.2d 847 (9th Cir.1982), the Ninth Circuit identified acceptable, narrowly tailored manners in which a city could regulate temporary signs:

> Instead of a general ban, the City might regulate the size, design, and construction of the posters ... institute clean up or removal requirements, ... or provide more stringent regulations for the areas of the City more in need of protection. Moreover, the City might specifically prohibit the erection of signs that obscure hydrants, traffic signs, and signals, or that block motorists' line of sight. We also think it clear that the City might prohibit the posting of signs on trees or shrubs.

*Id.* at 852–53 (citations omitted). In *Berger*, 569 F.3d at 1045, the Ninth Circuit found that the proposed permitting system was "entirely peripheral" to the city's need to enforce rules for the public park. Like *Taxpayers for Vincent*, the Ordinance here regulates "the size, design and construction of" UDCBs, and sets forth specific locations for placement of them, all without regard to the non-profit or for-profit status of the UDCB operator. Moreover, unlike *Berger*, the permitting system established by the Ordinance is directly related to the issues that the Ordinance was created to address and does not burden significantly more speech than is necessary to further its interests. For example, UDCBs have been improperly placed in parking spaces that were required to be kept available for use, or in vehicle maneuvering areas, that were required to be kept open and unobstructed. In addition, UDCBs generate traffic from the vehicles that drivers use to transport items their items for drop-off, and the trucks that service the UDCBs to collect those items. (Miller Decl. ¶¶6, 10 Exh. B (*9/14/2015 Agenda Report* at p. 2).) These raise issues of vehicle and pedestrian safety, and traffic management. (*Id.*) Accordingly, regulations that set specific locations for the placement of UDCBs address these issues directly. No more is required.

**(b) <u>The Ordinance Leaves Open Ample Means of Communication.</u>**

To be sure, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).) However, a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate. *See, e.g. Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (finding that Fleet Week restriction denying all boaters within 75-yard security zone around pier impermissibly denied peaceful anti-war protestors from accessing their intended audience via waterborne demonstrations

where all other approaches to the pier were blocked); *Heffron*, 452 U.S. at 654-55. Whether the remaining modes of communication are inadequate is the key issue. *Ward*, 491 U.S. at 802 ("That the city's limitations on volume may reduce to some degree the potential audience for respondent's speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate."); *Vosse v. The City of New York*, No. 12 CIV. 8004 (JSR), 2015 WL 7280226, at *3 (S.D.N.Y. Nov. 18, 2015) ("That the regulation at issue does not prohibit all non-commercial signs, but rather regulates the form and size of the sign (as opposed to the message contained therein) is strong evidence that the regulation leaves open ample alternatives for communication."); *Cf. City of Ladue*, 512 U.S. at 45, 54, 56 (recognizing city's legitimate interest in preventing "visual clutter," but finding ordinance was not a reasonable time, place, or manner restriction because it was not "persuaded that adequate substitutes exist for the important medium of speech that Ladue ha[d] closed off" and because "Ladue ha[d] almost completely foreclosed a venerable means of communication that is both unique and important.")

**In this case, the City conservatively estimates that 137 UDCBs could be placed in the City after the Ordinance goes into effect, a net decrease of only 15 UDCBs, which preserves more than 90% of existing UDCBs.**[13] (Miller Decl. ¶ 3.) Further, the Ordinance leaves approximately 5,890 acres of parcels of land in the City – 6% of the City's total acreage – for placement of UDCBs. (Miller Decl. ¶ 16, Exh. K (map of permissible zones).) The United States Supreme Court has found similar proportions to pass constitutional muster. *Renton*, 475 U.S. at 53-54 (reasonable alternative avenues of communication existed where ordinance left "some 520 acres, or more than five percent of the entire land area of Renton, open to use as adult theater sites.") Moreover, the remaining acreage is comprised of commercial and industrial zones which Plaintiff admits are "good locations" for UDCBs. (Declaration of K. Duus, ¶¶18 ("we look for locations that people already frequent on a regular basis, which are frequently found in

[13] The total number of UDCBs in the City (152) is based, in part, on Plaintiff's data, which is from 2014. (Miller Decl. ¶ 3.) Plaintiff admits that it has lost additional boxes since then due to normal turnover. (*Id.*) Accordingly, the net decrease of UDCBs once the Ordinance goes into effect will likely be less than 15, after taking into account that the total starting number is somewhat less than 152 UDCBs. (*Id.* ¶¶3, 16 & Exh. K (map of permissible zones).)

commercial zones."); 19 ("Industrial areas are good locations for UDCB placement due to the availability of space for them."). In fact, the only zoning restriction to which Plaintiff objects is the "high-density residential." (*Id.* ¶ 20.) However, the First Amendment does not guarantee Plaintiff the right to place UDCBs in any particular zone. *Renton*, 475 U.S. at 54-55 (finding that city had "sought to make *some areas* available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by *preventing those theaters from locating in other areas*," which "satisf[ied] the dictates of the First Amendment." "**This, after all, is the essence of zoning**.") (emphasis added).

Plaintiff also objects to the 1,000 foot separation requirement between UDCBs, which is the equivalent of three and a half city blocks.[14] In fact, the City also has a right to use it zoning laws to disperse UDCBs. On this issue the Supreme Court opined:

> We also find no constitutional defect in the method chosen by Renton to further its substantial interests. **Cities may regulate adult theaters by dispersing them, as in Detroit, or by effectively concentrating them, as in Renton.** "It is not our function to appraise the wisdom of [the city's] decision to require adult theaters to be separated rather than concentrated in the same areas.... [T]he city must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *American Mini Theatres*, 427 U.S., at 71 (plurality opinion).

*Renton*, 475 U.S. at 52 (emphasis added).

Plaintiff's complaint that there is no "guarantee" that Plaintiff will be able to locate property owners, within the confines of the Ordinance's geographical restrictions also does not violate the First Amendment. The United States Supreme Court has specifically rejected such a contention. "That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation." *Renton*, 475 U.S. at 54 (emphasis added) (rejecting plaintiff's similar argument that "some of the land in question is already occupied by existing businesses, that 'practically none' of the undeveloped land is currently for sale or lease, and that in general there are no 'commercially viable' adult theater sites within the 520 acres left open by the Renton ordinance.") Although the

[14] Instead, Plaintiff advocates for a 250 feet separation requirement, which would allow a UDCB on every corner in the City. (Miller Decl. ¶ 11 n. 3.) While it is true that "[p]lausible public policy exceptions might well be made in support of any such exception, [] it by no means follows that it is therefore constitutionally mandated… ." *Members of the City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 815-16 (1984).

Supreme Court has "cautioned against the enactment of zoning regulations that have 'the effect of suppressing, or greatly restricting access to, lawful speech,' [it has] never suggested that the First Amendment compels the Government to ensure that adult theaters, *or any other kinds of speech-related businesses for that matter*, will be able to obtain sites at bargain prices." *Id.* (emphasis added).

Finally, Plaintiff overstates the impact the Ordinance's geographical restrictions will have on the number of Plaintiff's UDCBs. For example, Plaintiff assumes that it will lose, and thus does not take into account the existing UDCBs already placed in approved locations, but where another UDCB exists within 1,000 feet. As set forth in the Ordinance, in such cases, the City will ask those operators to try to reach an agreement as to which operator will remain in the particular location. If the operators are unable to reach an agreement, a lottery system will select the UDCB for each competing location.[15] (Ordinance, §5(D).) Thus, Plaintiff fails to take into account UDCB locations that Plaintiff might successfully negotiate with another operator, or that Plaintiff might retain through the lottery system.

Where, as here, the Ordinance allows Plaintiff the ability to reach its intended audience, and leaves ample alternative channels for communication, it meets Constitutional muster.

**(c) <u>Even if the Ordinance is Deemed Content-Based it is a Valid Regulation.</u>**

**1) <u>The Court Should Apply the Secondary Effects Doctrine.</u>**

The Ordinance at issue here is directed at the secondary effects of UDCBs, such as blight, graffiti, and other nuisance related issues. An ordinance that is seemingly content based may still be analyzed as content neutral if the government shows it is justified by a desire to eliminate a secondary effect – that is, an undesirable effect only indirectly related to the content or communicative impact of the speech. *Crawford v. Lungren*, 96 F.3d 380, 384-85 (9th Cir. 1996); *Ward*, 491 U.S. at 791 (in the area of sound amplification: "a regulation that serves purposes

---

[15] With regard to how to determine which UDCB is allowed to remain in the event that two are within 1,000 feet of each other, Plaintiff proposed the following solution: "1. Preference should go to registered non-profits. 2. If both are registered non-profits, then preference should go to the box that has been in the area the longest." (Miller Decl. ¶ 11, Exh. J (October 31, 2014, Letter from Tenax Law Group "Response for Comment on Proposed Framework for Regulating Unattended Donation Boxes (UDBs) #2 From Campus California").) The City declined to exhibit such preference for non-profits, and instead adopted the lottery system in the event that the operators could not reach agreement.

unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."); *Cf. City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 430 (1993) (acknowledging doctrine but declining to apply it where city had not identified any secondary effects of commercial handbill news racks that distinguished them from news racks the city allowed to remain on its sidewalks; finding that "Cincinnati has enacted a sweeping ban that bars from its sidewalks a whole class of constitutionally protected speech"); *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 789 (9th Cir. 2008) (acknowledging doctrine but declining to apply it where violation of penal code found only after students reacted to plaintiffs' speech, a truck with images of aborted fetuses; noting that "[t]his application of the statute raises serious First Amendment concerns."). Examples of legitimate secondary effects, include "prevention of crime, maintenance of property values, and protection of residential neighborhoods." *Boos v. Barry*, 485 U.S. 312, 320 (1988); *see also Renton*, 475 U.S. at 47-49 (noting that although ordinance "treats theaters that specialize in adult films differently from other kinds of theaters [, it] is aimed not at the *content* of the films shown at 'adult motion picture theatres,' but rather at the *secondary effects* of such theaters on the surrounding community.") (emphasis in original). Like *Renton*, the content of the expressive message of any particular UDCB is irrelevant and not the target of the Ordinance. Thus, although the Ordinance could be viewed as content-based in that it regulates UDCBs, which includes a subcategory of expressive speech: charitable solicitation bins, the Ordinance should nevertheless be treated as content-neutral since it targets the secondary effects of UDCBs and not the expressive components of them.

**2) <u>The Ordinance Can Withstand the Application of Strict Scrutiny.</u>**

If the Court deems the Ordinance a content-based restriction on speech, and declines to apply the secondary effects doctrine, the provisions of the Ordinance may stand only if they can survive strict scrutiny. To withstand strict scrutiny, the City must show that the content-based restrictions further a compelling government interest that is narrowly tailored to achieve that interest. *See, e.g. Reed*, 135 S. Ct. at 2231-32.

The City's interests in preventing blight issues and promoting traffic and pedestrian safety should be deemed to be compelling interests. *See One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009, 1013 (9th Cir.1996) (finding that cities do "have a substantial interest in protecting the aesthetic appearance of their communities by avoiding visual clutter ... [and] in assuring safe and convenient circulation on their streets."). In *Members of the City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984) the United States Supreme Court considered an ordinance that banned posted signs on public property against the city's substantial esthetic interests in preventing visual clutter and blight. The Supreme Court opined that "the problems addressed by this ordinance – the visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property – constitutes a significant evil within the City's power to prohibit. '<u>The city's interest in attempting to preserve [or improve] the quality of urban life is one that must be accorded high respect</u>.'" *Id.*, 466 U.S. at 807 (emphasis added) (citing *American Mini Theatres, Inc.*, 427 U.S. at 71). The Supreme Court upheld the ordinance as a narrowly tailored regulation. *Members*, 466 U.S. at 807-08. As set forth in Part IV.C, *supra*, the Ordinance is narrowly tailored to address the blight, traffic and other nuisance and safety issues it was intended to, and is directed at the non-expressive components of UDCBs.[16]

### 3. <u>The Permit Requirement and Fees Do Not Violate the First Amendment.</u>

Plaintiff contends that the requirement of a permit for UDCBs constitutes an unlawful prior restraint. The United States Supreme Court defines a prior restraint in two ways: 1) an ordinance that conditions the exercise of First Amendment rights on unbridled discretion of government officials; and 2) an ordinance that does not impose adequate time limits on government officials to issue a decision. *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 894 (9th Cir. 2007) (*citing City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988)); *see also San Francisco Apartment Ass'n v. City & Cty. of San Francisco*, No. 15-CV-01545-PJH, 2015 WL

---

[16] The City strongly believes that the reasonable time, place and manner test properly applies to the Ordinance, as the Ordinance is not content-based and does not favor one type of speech over another. In the unlikely event that the Court is inclined to apply strict scrutiny however, the City respectfully requests that the parties be allowed another round of briefing limited specifically to the elements of the test for strict scrutiny.

6747489, at *5 (N.D. Cal. Nov. 5, 2015). The Ordinance does not meet the definition of a prior restraint. First, the Director of Planning and Building's authority to issue (or deny) a permit is clearly defined and limited by OMC § 5.19.090, which sets forth six specific, objective criteria that the Director must consider. OMC §§ 5.19.090 ("Requirements for the approval and renewal of a UDCB permit"). Second, the Director has only 60 days to issue a written decision approving or denying an initial application and a renewal application. OMC § 5.19.100 ("Time Limit for Final Decision") (60 days for placement of UDCB); §5.19.080(C) (60 days for renewal of UDCB permit).[17] Thus, the permit requirement is not an unlawful prior restraint.

Plaintiff also contends that the cost of the permit fees is excessive. The City is entitled to charge fees to defray its reasonable administrative costs. *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1248-49 (10th Cir. 2000) (finding fee valid where it was narrowly tailored to City's interest in preventing fraud, and did no more than defray administrative costs). Plaintiff contends that any fee beyond a nominal fee would violate the Constitution, since there are always lower alternatives.[18] However, the Constitution does not require the City's residents and taxpayers to subsidize Plaintiff's message by charging a lower fee than it costs to provide the service/process the application. *Id.* (noting that *Murdock v. Pennsylvania*, 319 U.S. 105 (1943) did not stand for proposition that only nominal charges are constitutionally permissible). As set forth above, City staff conducted a fee analysis study to determine an appropriate basis for fees such that the fee did not exceed the reasonable cost of providing the service (i.e., processing the application). (Miller Decl. ¶ 11.) In doing so, the staff also compared the fees for UDCBs in other jurisdictions and determined that the City's proposed fees were reasonable and comparable.[19] Where, as here, the

---

[17] Appeal and petition processes are similarly strictly limited. An applicant has the right to appeal to the City Administrator in the event of an unfavorable decision by the Director. OMC § 5.19.110 ("Appeal and Petition Processes"). An applicant may also directly petition to the City Administrator to seek relief from the Ordinance, where an applicant contends that the Ordinance violates any federal, state or local law or regulation as applied to that applicant. OMC §5.19110(B). In both cases, the City Administrator must issue a decision on an appeal within 60 days. OMC § 5.19.110(A).

[18] Miller Decl. ¶ 11, Exh. J (April 21, 2015 letter from Plaintiff's counsel) ("[W]e now question whether the City can charge more than a nominal application fee... . []Were the City to charge $100, the response would be that $50 is less restrictive. Were the City to charge $50, the response would be that $25 is less restrictive [] ." *Id.* at p. 2.)

[19] *See* note 4, *supra;* (Miller Decl. ¶ 6, Exh. B (*1/12/15 Agenda Report* at p. 4 & Attachment C to *1/12/15 Agenda Report*.).)

fees simply defray the City's administrative costs, and allow the City to regulate UDCBs and thus serve the City's substantial interests in preventing blight and other nuisance issues, no constitutional violation exists.

### 4. **<u>The Distinction Between Organizations With Brick and Mortar Storefronts and Those Without Is Not a Constitutional Violation.</u>**

Contrary to Plaintiff's contention, the Ordinance does not favor "local" charities. Rather it exempts from the application requirements and certain geographical restrictions, UDCBs in which the owner operates a related business at the same locale. (*See* OMC § 5.19.060(B); Miller Decl. ¶¶ 12-14.) The rationale behind the carve-out is that such UDCBs can be easily monitored on a daily basis by the operator, which supports the Ordinance's goal to limit blight caused by UDCBs. (*Id.*) There is nothing in the Ordinance that would prevent Plaintiff from operating a UDCB that is exempt from the application requirements under OMC Section 5.19.060(B) or geographical restrictions set forth in OMC Section 5.19.120 (A), (B) and (C), if Plaintiff otherwise met the requirements of the UDCB regulations. (*Id.*)

Accordingly, the regulations apply equally to all UDCB owners. For example, if the Salvation Army owned a stand-alone UDCB, it would be subject to the same restrictions as Plaintiff in this case. (*Id.*) Likewise, if Plaintiff opened a brick and mortar donation store, and also operated a UDCB outside of the building but on the same site, that UDCB would be exempt from the application requirements under OMC Section 5.19.060(B) and the geographical restrictions set forth in OMC Section 5.19.120 (A), (B) and (C). (*Id.*)

Plaintiff's argument also ignores the realities of "local" brick and mortar charitable organizations, which are required to secure various licenses and permits in order to build, purchase or lease and occupy a building and operate a charitable organization within City limits. (*Id.* ¶ 14.) Plaintiff misleads this Court in suggesting that organizations such as Goodwill or the Salvation Army are not subject to regulation. They are. (*Id.*)

Even if the Ordinance could properly be viewed as favoring local over non-local charities, it should not be subject to strict scrutiny since that distinction does not implicate a suspect class. *Cf. Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1481-82 (6th Cir. 1995)

("distinction between small and large charities not implicate a suspect class;" noting that "[s]trict scrutiny need be applied to legislative classifications only when "the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class.") (citing *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976)); *Reed* , 135 S. Ct. at 2232 ("[n]ot 'all distinctions' are subject to strict scrutiny, only *content-based* ones are. Laws that are *content neutral* are instead subject to lesser scrutiny.")).

### B. The Remaining Factors Do Not Support Plaintiff's Motion.

#### 1. Plaintiff Is Not Likely to Suffer Irreparable Harm.

The mere fact that it may become more difficult for Plaintiff to place UDCBs in Oakland does not establish irreparable harm. *Ypsi*, 26 F.Supp.3d at 693-94 ("Though the court appreciates that it may become more difficult for Plaintiff to place bins within the Township and, further, that requiring property owners to apply for site plans creates an additional hurdle […], the Court is not persuaded that Plaintiff's injury is irreparable as adequate remedies at law exist.") Indeed, Plaintiff overstates the likely impact of the Ordinance on its total number of UDCBs, and in fact, it is premature to presume what the final impact of the Ordinance on Plaintiff may be. *See* Part IV.A.2.(b), *supra; cf. Ypsi*, 26 F.Supp.3d at 694 ("Plaintiff has not suffered irreparable injury because the process in place to grant Plaintiff relief has not been fully explored by the Plaintiff.") Plaintiff has not yet submitted an application for any UDCB. Moreover, as noted by the Court during the hearing on the temporary restraining order, payment of a fee is not an irreparable injury. In addition, Plaintiff retains an adequate remedy at law. The Ordinance expressly provides for appeals where Plaintiff is dissatisfied with the result of an application determination, and a petition for relief from the Ordinance where, as here, Plaintiff contends that the Ordinance violates a law as applied to Plaintiff. OMC § 5.19.110. Plaintiff has not established irreparable harm.

#### 2. The Balance of Equities Do Not Tip in Plaintiff's Favor; A Preliminary Injunction Is Not in the Public's Interest.

The City has met its burden to show that the Ordinance is a reasonable time, place or manner restriction that serves its substantial interests in preventing blight, illegal dumping, graffiti and a host of other secondary impacts caused by UDCBs. Plaintiff, on the other hand, has not

shown that circumventing a lawful Ordinance aimed to prevent these public nuisances tips the balance of equities in Plaintiff's favor. Nor can this be in the public's interest. The Ordinance represents the City's substantial interest in maintaining the quality of urban life and the character of the City's neighborhoods. Plaintiff cannot show that allowing a proliferation of UDCBs that conflict with the Ordinance supports that, or any other public interest. In all events, Plaintiff has failed to make a clear showing on the requisite elements for a preliminary injunction such that it is entitled to this extraordinary remedy. *Winter*, 555 U.S. at 20, 22; *Earth Island Inst.*, 626 F.3d 469. The Motion should be denied.

### C. <u>The Court Should Not Enjoin the Moratorium.</u>

Plaintiff not only seeks to enjoin the enforcement of the Ordinance, but also to override the automatic, temporary moratorium extension provision that the City thoughtfully included in the event that a court enjoined the Ordinance. (Ordinance No. 13335 C.M.S., § 13.) Pursuant to the authority granted by Government Code section 65858, the City Council has had a moratorium on the placement or installation of UDCBs in effect by Emergency Ordinance since April 22, 2014. (Miller Decl. ¶¶ 7, 15.) The purpose of the moratorium was to avoid a proliferation of new UDCBs that conflicted with the forthcoming regulations that City staff was working to prepare. (*See e.g.* Miller Decl. ¶ 7, Exh. D (*4/18/2014 Agenda Report* at p 1).) Section 13 of the Ordinance extends the moratorium until April 22, 2016 – the duration permitted by Government Code section 65858 – and effectively temporarily revives the moratorium on the placement or installation of UDCBs in the event that the Ordinance is enjoined by a court of competent jurisdiction. (Ordinance No. 13335 C.M.S., § 13.)

The automatic revival of the moratorium on UDCBs serves to preserve the status quo: to avoid placement or installation of new UDCBs, which conflict with the City's UDCB regulations and the City's general plan, while the legality of the regulations is established in Court.[20]

[20] The City Council adopted the Land Use and Transportation Element of the Oakland General Plan in March 1998 to guide future land use and development in the City. ("General Plan"). (Miller Decl. ¶ 15 n. 6.) The General Plan defines several goals and objectives to promote the quality of the City's neighborhoods and contains specific policies regarding reviewing potential nuisance activities (Policy N1.7) and alleviating public nuisances (Policy N11.4). (*See, e.g.* Emergency Ordinance No. 13225 C.M.S.)

Dissolving the automatic moratorium on UDCBs before the City has the chance to properly defend the new regulations may result in further blight and enforcement issues. (Miller Decl. ¶ 15.) By asking the Court to enjoin the automatic moratorium provision, Plaintiff is not seeking to preserve the status quo, but rather is trying to put itself *in a better position* than it was before the Ordinance was adopted on October 20, 2015.[21] Denying the City the chance to apply the moratorium to UDCBs while this matter is litigated would unfairly prejudice the City, but would not put the Plaintiff in any worse position than it was before the enactment of the Ordinance.

**V. CONCLUSION**

For the foregoing reasons, Defendant City of Oakland respectfully requests that the Court deny Plaintiff's Motion for a Preliminary Injunction.

DATED: December 16, 2015

**OFFICE OF THE CITY ATTORNEY**
BARBARA J. PARKER
OTIS MCGEE, JR.
JAMES F. HODGKINS
SELIA M. WARREN

By: /s/ Selia M. Warren
Selia M. Warren
Attorneys for Defendant CITY OF OAKLAND

---

[21] Even without the Ordinance or the moratorium, UDCBs are technically prohibited in the City, which is a permissive zoning municipality. The Planning Code provides that "no land shall be improved or used for any activity or facility which is not listed as permitted or conditionally permitted in the applicable individual zone regulations or development control maps." OPC § 17.07.065(A) ("Permitted and conditionally permitted uses"). Under permissive zoning, "any use not enumerated in the code is presumptively prohibited." *City of Corona v. Naulis*, 166 Cal. App. 4th 418,425, 433 (2008); *County of Sonoma v. Superior Court*, 190 Cal. App. 4th 1312, 1315 n.3 (2010). Thus, because UDCBs are neither permitted nor conditionally permitted, the City could have, notwithstanding the constitutional issues, simply required the removal of all UDCBs as a prohibited use. Instead, the City allowed the existing UDCBs to remain in operation, but passed a moratorium on new UDCBs, pending adoption of permanent regulations. Plaintiff effectively asks the Court to allow Plaintiff to place UDCBs wherever it suits Plaintiff, without regard to the City's regulations, and at no cost to Plaintiff. The Constitution does not impose such obligations on the City.