1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    RECYCLE FOR CHANGE,                    Case No. 15-cv-05093-WHO

           Plaintiff,
8                                           ORDER DENYING MOTION FOR
                                            PRELIMINARY INJUNCTION
9          v.
                                            Re: Dkt. Nos. 22, 23
10   CITY OF OAKLAND,

           Defendant.
11

12                                 INTRODUCTION

13         On October 20, 2015, the Oakland City Council passed Ordinance No. 13335 C.M.S. ("the

14   Ordinance") to regulate unattended donation and collection boxes ("UDCB") within the Oakland

15   city limits.  Plaintiff Recycle for Change ("Recycle"), a nonprofit organization that utilizes

16   UDCBs to receive charitable donations of used textiles that it then recycles, seeks to enjoin the

17   Ordinance because it violates Recycle's rights under the First and Fourteenth Amendments.  I find

18   that intermediate scrutiny applies and that the Ordinance is a reasonable time, place, and manner

19   regulation.  Recycle has not shown that it is likely to prevail on the merits, nor has it shown

20   irreparable injury.  I heard argument on January 13, 2016, and now DENY Recycle's motion.

21                                 BACKGROUND

22         As part of its mission, Recycle collects used clothing and other textiles and uses revenue

23   generated from its recycling and reuse activities to generate financial support for other nonprofits

24   that are working to fight poverty around the world.  Comp. ¶8 [Dkt. No. 1].  In furtherance of

25   these goals, Recycle operates and maintains UDCBs to receive donations of unwanted clothing

26   and other items from individuals.  *Id*. ¶12.  Recycle's UDCBs are made of steel, and are

27   approximately 7 feet tall, 3 feet wide, and 4 feet deep.  *Id*. ¶13.  The UDCBs have a chute in the

28   front, much like a mailbox, where people can deposit their donations.  *Id*. ¶14.  The bins are

painted and clearly marked as belonging to Recycle.  *Id*.  The UDCBs are placed on private

property with permission from the property possessors.  *Id*.  These placements are generally

secured after Recycle researches potential host sites, communicates its mission to the potential

host, and negotiates an agreement with them.  *Id*. ¶16.  The bins are visited approximately two to

three times a week for service and maintenance.  *Id*. ¶17.

On March 27, 2012, Oakland's Community and Economic Development Committee held a

meeting to discuss the regulation of UDCBs.  Schilt Decl., Exh. C [Dkt. No. 25-3].[1]  During the

meeting, the three council members in attendance heard from representatives of non-profits such

as Goodwill Industries and St. Vincent de Paul.  *Id*.  Approximately two years later, on April 1,

2014, the Oakland Redevelopment Successor Agency and the Oakland City Council held a

concurrent meeting to further consider options for regulating UDCBs.  Schilt Decl., Exh. D [Dkt.

No. 25-4].  Many issues were discussed during the meeting including the possibility of a total ban,

the appropriate permit fee amount, potential enforcement mechanisms, and proposals for ways in

which more donations could be directed towards Goodwill and St. Vincent de Paul, thereby

lessening the blight and maintenance issues caused by poorly maintained UDCBs.  *Id*.

On April 22, 2014, the Oakland City Council placed a 45-day moratorium on new

placements of UDCBs, which was extended at subsequent city council meetings.  Comp. ¶23.  The

Ordinance was approved for final passage on October 20, 2015.  Schilt Decl., Exh. A [Dkt. No.

25-1].  The Ordinance adds chapter 5.19 to the Oakland Municipal Code "which will regulate the

placement, appearance, operation, and maintenance of UDCBs."  *Id*.  The "sole purpose" of the

Ordinance is to "promote the public health, safety and/or welfare" associated with UDCBs in a

"content neutral manner, based upon reasonable time, place and manner restrictions" that does not

discriminate against any particular viewpoint, content, or UDCB operator.  *Id*.

Municipal chapter 5.19, enacted by the Ordinance, makes it unlawful to operate a UDCB

unless the operator first obtains a permit or is exempted from the permit requirements.  Schilt

Decl., Exh. B [Dkt. No. 25-2].  The permit application process includes paying a $535 fee for each

UDCB, filing out an application form, providing a site plan to the city, and submitting proof of

---

[1] Recycle's requests for judicial notice of the documents listed in Dkt. No. 25 are GRANTED.

United States District Court
Northern District of California

1  liability insurance.  *Id.*; Duus Decl. ¶26 [Dkt. No. 24].  Additionally, there are annual renewal

2  payments totaling approximately $245.  Duus Decl. ¶26.  UDCBs that are on the same lot or

3  enclosed within an occupied principal building on property owned or leased by the UDCB

4  operator are not required to submit a permit application.  Schilt Decl., Exh. B.  The regulations

5  designate only certain areas of the city as available for UDCB placements and create a 1,000 foot

6  exclusionary zone between bins.  *Id.*  The regulation also governs the physical attributes and

7  maintenance of UDCBs.  *Id.*

8       Recycle has maintained UDCBs in Oakland since 2005 and currently has 63 bins in

9  different locations.  Comp. ¶22.  For various reasons, Recycle loses approximately 20% of its site

10  hosts in a given year.  Duus Decl. ¶16.  The revenue generated by its bins is "by far" the major

11  source of Recycle's income.  Comp. ¶18.  Recycle alleges that the Ordinance will eliminate

12  approximately 90% of its UDCBs in Oakland, which will force the organization to reduce funding

13  to charitable programs by approximately $57,000.  Duus Decl. ¶¶24, 25.  The application fee is

14  also burdensome to Recycle.  *Id.* ¶28.  Under the current regulatory scheme, Recycle is

15  considering ending its operations in Oakland.  *Id.* ¶¶30, 31.

16       Recycle brings four causes of action against Oakland: (1) violation of the Free Speech

17  Clause of the First Amendment of the United States Constitution; (2) violation of Article 1,

18  Section 2 of the California Constitution; (3) violation of the Equal Protection Clause of the

19  Fourteenth Amendment of the United States Constitution; and (4) violation of Article 1, Section 7

20  of the California Constitution.  On December 2, 2015 Recycle filed a motion for preliminary

21  injunction seeking "an injunction staying enforcement of the regulatory scheme until such time as

22  the constitutionality of the regulatory scheme can be fully adjudicated."  Mot. at 17 [Dkt. No. 23].

23  **LEGAL STANDARD**

24       The same legal standard applies to a motion for a temporary restraining order and a motion

25  for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832,

26  839 n. 7 (9th Cir. 2001).  A plaintiff seeking either remedy "must establish that he is likely to

27  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

28  relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

1    *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009)

2    (internal citations removed).  Injunctive relief is "an extraordinary remedy that may only be

3    awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def.*

4    *Council, Inc.*, 555 U.S. 7, 22 (2008).

5            To grant preliminary injunctive relief, a court must find that "a certain threshold showing

6    is made on each factor."  *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).  Provided that

7    this has occurred, in balancing the four factors, "'serious questions going to the merits' and a

8    balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary

9    injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and

10   that the injunction is in the public interest."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

11   1127, 1135 (9th Cir. 2011).

12                                         **DISCUSSION**

13           In its motion for preliminary injunction, Recycle asserts that: (1) it is likely to succeed on

14   the merits of its First and Fourteenth Amendment claims; (2) it is likely to suffer irreparable harm

15   absent an injunction; (3) the balance of the equities tips in its favor; and (4) an injunction would be

16   in the public interest.[2]

17   **I.       LIKELIHOOD OF SUCCESS ON THE MERITS**

18           **A.       First Amendment Claim**

19           Recycle contends that the Ordinance violates its First Amendment right to solicit charitable

20   donations, thereby violating its rights to free speech.  Mot. at 14.  The First Amendment's free

21   speech clause provides that "Congress shall make no law ... abridging the freedom of speech, or of

22   the press."  U.S. CONST. amend. I.  The Supreme Court has established that charitable donations

23   qualify as a form of constitutionally protected speech.  *Vill. of Schaumburg v. Citizens for a Better*

24   *Env't*, 444 U.S. 620, 633 (1980); *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947,

25   959 (1984).  Neither party disputes this.  Mot. at 16; Opp. at 8 [Dkt. No. 28].  The disagreement

26   lies over whether the Ordinance can survive the appropriate level of scrutiny.

27
28   [2] Although Recycle's complaint is based on violations of both the federal and California constitutions, Recycle's motion for preliminary injunction focuses only on its First and Fourteenth Amendment violations and presents no argument why the analysis under its California constitution claims would lead to a different outcome.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Recycle contends that because the Ordinance seeks to regulate only containers that solicit

2  donations of recyclable material, it should be considered a content-based restriction subject to

3  strict scrutiny.  Mot. at 1.  In opposition, Oakland asserts that the Ordinance is a reasonable

4  regulation governing the time, place, and manner of speech and, as such, does not violate

5  Recycle's First Amendment rights.  Opp. at 7.  Alternatively, Oakland contends that even if the

6  Ordinance is deemed a content-based restriction, it remains a valid regulation.  *Id*. at 18.

7  Generally, a content-based regulation on protected speech "can stand only if it satisfies

8  strict scrutiny."  *United States v. Playboy Entm't Grp., Inc*., 529 U.S. 803, 813 (2000).  If a court

9  applies strict scrutiny, the regulation "must be narrowly tailored to promote a compelling

10  Government interest" and must use the least restrictive means to achieve its ends.  *Id*.  "A

11  regulation is content-based if either the underlying purpose of the regulation is to suppress

12  particular ideas, or if the regulation, by its very terms, singles out particular content for differential

13  treatment."  *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009); *see also Planet Aid v.*

14  *City of St. Johns, MI*, 782 F.3d 318, 326 (6th Cir. 2015) ( "*St. Johns*") ("[I]f a law treats speech

15  differently based on the viewpoint or subject matter of the speech, on the words the speech

16  contains, or on the facts it conveys, the law is based on the content (and the communicative

17  impact) of speech.") (internal quotation marks, citations, and modifications omitted).

18  Recycle relies primarily on *St. Johns* to argue that because the Sixth Circuit affirmed the

19  district court's finding that the city's ordinance was content-based and subject to strict scrutiny,

20  the same analysis applies here.  In *St. Johns*, the City of St. Johns passed an ordinance prohibiting

21  the placement or use of a "donation box" within the city.  *Id*. at 322.  One of the critical questions

22  before the *St. Johns* court was whether the regulation was content-based since the content status of

23  a regulation dictates the level of scrutiny applied to it.  *Id*. at 326.  Determining whether a

24  particular regulation is content-based is "not always a simple task."  *Id*.  The court concluded that

25  because the ordinance did not ban or regulate all unattended, outdoor receptacles, but instead

26  banned only "those unattended, outdoor receptacles with an expressive message on a particular

27  topic – charitable solicitation and giving," it was content-based and subject to strict scrutiny.  *Id*. at

28  328.  Key to *St. Johns*' determination was that the ordinance did not reflect that concerns

United States District Court
Northern District of California

regarding the effects of UDCBs – blight, child safety, potential for criminal loitering – were also applicable to other unattended, outdoor receptacles such as dumpsters, recycling center collection bins, and public and private trash cans. *Id*. St. Johns' ordinance permitted the placement and use of non-expressive bins but completely banned UDCBs. *Id*. Therefore, the court concluded the regulations targeted UDCBs and were not intended to address the secondary effects of unattended bins. *Id*.

Here, because the Ordinance does not prohibit UDCBs, does not implement content-based restrictions, and is viewpoint neutral, the application of strict scrutiny is not appropriate. Oakland's regulatory structure is not analogous to the ordinance in *St. Johns*. To begin with, the Ordinance does not totally ban UDCBs. Instead, it regulates the placement, maintenance, and physical characteristics of UDCBs irrespective of their message or affiliated organization. It does not permit the installation and use of non-expressive bins while banning the use of UDCBs.

In preparation for drafting the Ordinance, Oakland's Department of Planning and Building staff prepared reports and draft ordinances for consideration by the City Council. Miller Decl., Exh. B [Dkt. No. 29]. Among other things, the reports describe Oakland's regulations for recycling collection center bins, detached accessory structures, and trash and recycling receptacles. *Id*. The reports detail that concerns for graffiti, blight, and public safety differ among the various receptacles and advocate for a separate set of regulations to address UDCB's particularized secondary effects. *Id*. These reports reflect some of the specific UDCB-related concerns discussed at the City Council meetings as well. This evidence supports Oakland's argument that the "predominant" intent of the Ordinance is to enact a content-neutral way to regulate UDCBs. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48 (1986) (finding that the ordinance's predominate intent was to address the secondary effects of adult theaters because "by its terms is designed to prevent crime, protect the city's retail trade, maintain property values, and … not to suppress the expression of unpopular views").

The Ordinance also does not discriminate on the basis of viewpoint. The regulations do not require that an official review the expressive components of a UDCB to determine whether it is subject to enforcement. *See Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015)

("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."); *City of Renton*, 475 U.S. at 48 (defining content-neutral regulations as those that "are justified without reference to the content of the regulated speech.").  It applies equally to UDCBs maintained by charitable non-profits such as Recycle or for profit organizations.  Recycle's argument that the Ordinance is viewpoint-based because it exempts some brick and mortar stores from certain requirements is unconvincing. Reply at 8 [Dkt. No. 31].  The Ordinance distinguishes on the basis of geographic properties, not on viewpoint.  If Recycle were to open its own physical location in Oakland, there is nothing preventing it from taking advantage of these same benefits.

When considered in the broader context of outdoor bin regulations, Oakland's UDCB standards are more akin to those at issue in *Planet Aid v. Ypsilanti Township*, 26 F. Supp. 3d 683 (E.D. Mich. 2014) ("*Ypsilanti*").  *Ypsilanti* concerned an ordinance that regulated all "accessory structures installed by property owners," including donation bins. 26 F. Supp. 3d at 686.  The court concluded that the zoning ordinance was content neutral because it subjected all accessory structures to the ordinance.  *Id*. at 689.  Similarly, in Oakland, UDCBs are not the only unattended bins subject to regulation.  That in *Ypsilanti* all bins were subject to the same regulations, whereas Oakland's regulations distinguish between UDCBs and other unattended, outdoor bins, does not convert Oakland's regulations to content-based restrictions.  Additionally, unlike the regulation at issue in *St. Johns*, the Ordinance does not constitute a complete ban on UDCBs.  There is no dispute that UDCBs will continue to be allowed in Oakland following the Ordinance's implementation.  Therefore, as in *Ypsilanti*, strict scrutiny is not mandated.  26 F. Supp. 3d at 688 ("The Court is unpersuaded that the strict scrutiny standard should be applied to determine the constitutionality of the Defendant's zoning ordinance because the Plaintiff has not cited any language in the Defendant's zoning ordinance that places a total ban on all donation bins.").

Oakland argues that the regulation should be subject to a reasonable time, place, and manner analysis.  Opp. at 7.  "[T]he fact that a government regulation may incidentally impact some protected speech does not automatically trigger strict scrutiny."  *St. Johns*, 782 F.3d at 326. "[R]egulations that are unrelated to the content of speech are subject to an intermediate level of

United States District Court
Northern District of California

1   scrutiny." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). "[E]ven in a public

2   forum the government may impose reasonable restrictions on the time, place, or manner of

3   protected speech, provided the restrictions are justified without reference to the content of the

4   regulated speech, that they are narrowly tailored to serve a significant governmental interest, and

5   that they leave open ample alternative channels for communication of the information." *Ward v.*

6   *Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks and citations omitted).

7        Although Recycle acknowledges that so long as the Ordinance does not unduly burden

8   speech, Oakland may implement and enforce a reasonable regulatory scheme, it does not argue

9   that the Ordinance fails an intermediate level of scrutiny. Reply at 5. Recycle contends that

10  because less restrictive alternatives exist, Oakland must use those alternatives. Opp. at 4. But

11  under an intermediate scrutiny analysis, "the requirement of narrow tailoring is satisfied so long as

12  the regulation promotes a substantial government interest that would be achieved less effectively

13  absent the regulation." *Ward*, 491 U.S. at 799 (internal quotation marks, citations, and

14  modifications omitted). It need not be the least restrictive or intrusive means of doing so. *Id*. at

15  798.

16        "[I]t is well-settled that the state may legitimately exercise its police powers to advance

17  esthetic values." *Members of the City Council of City of Los Angeles v. Taxpayers for Vincent*,

18  466 U.S. 789, 805 (1984). Oakland asserts that it has a significant government interest in

19  addressing the impacts of poorly maintained UDCBs including illegal dumping, scavenging,

20  graffiti, and traffic safety. The Supreme Court has squarely held that a city's concerns regarding

21  traffic safety and its appearance are "substantial governmental goals." *Metromedia, Inc. v. City of*

22  *San Diego*, 453 U.S. 490, 507-08 (1981) ("Nor can there be substantial doubt that the twin goals

23  that the ordinance seeks to further—traffic safety and the appearance of the city – are substantial

24  governmental goals."). Considering that the Ordinance addresses these concerns by regulating the

25  size, maintenance, and location of UDCBs, Recycle has raised no serious question that the

26  Ordinance is not sufficiently narrowly tailored to Oakland's goals to survive intermediate scrutiny.

27        Recycle also contends that the permit application fee is "extremely burdensome" to its

28  organization. Mot. at 12. The initial application and renewal fees, $535.31 and $245.71,

respectively, are based on the city's "cost structure, and estimated time required for City staff to complete processing of the application, and site inspections." Opp. at 4 n.4. Oakland asserts that its staff conducted a fee analysis study to determine an appropriate basis for fees so that the fee did not exceed the reasonable cost of providing the service of processing the application and was within the range of what other cities charge for similar services. Miller Decl. ¶11.[3] Municipalities are not required to charge only nominal fees for their services. *See Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1248 (10th Cir. 2000); *Kwong v. Bloomberg*, 723 F.3d 160, 166 n.11 (2d Cir. 2013). Because Recycle has provided no evidence that the fee "does no more than defray reasonable administration costs," it has not raised any serious issues regarding this aspect of the analysis. *Am. Target Advert.*, 199 F.3d at 1248.

Additionally, alternative avenues of communication for Recycle remain. The Ordinance does not restrict Recycle's ability to solicit charitable donations in a manner unrelated to UDCBs.

In sum, intermediate scrutiny applies to the Ordinance, which is a reasonable time, place and manner regulation. It is not likely that Recycle will prevail on the merits of its challenges to the Ordinance

### B.       Fourteenth Amendment Claim

Recycle argues that because the Ordinance uses classifications to create an "exception" for certain organizations and "singles out" donation bins for regulation, the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment. Mot. at 16. The Ordinance exempts UDCBs located on owner-owned or leased parcels from the application requirement and certain geographical restrictions. Duus Decl., Exh. B. Oakland defends this carve out on the basis that such UDCBs can be "easily monitored on a daily basis" by the operator, supporting its goals to limit the blight caused by poorly maintained UDCBs. Opp. at 22.

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne*

---

[3] In its analysis, Oakland looked at what eight other California jurisdictions charge for UDCB permits and found that the initial application fee ranged from $132 to $3,742. Miller Decl. ¶11 n.2.

United States District Court
Northern District of California

1    *Living Center*, 473 U.S. 432, 439 (1985) (internal citations and quotation marks omitted).  "[T]he

2    Constitution neither knows nor tolerates classes among citizens."  *Romer v. Evans*, 517 U.S. 620,

3    623 (1996) (internal quotation marks and citations omitted).  However, "[t]he Fourteenth

4    Amendment's promise that no person shall be denied the equal protection of the laws must coexist

5    with the practical necessity that most legislation classifies for one purpose or another, with

6    resulting disadvantage to various groups or persons."  *Id.* at 631.

7        Recycle has not identified, and I do not find, that the Ordinance discriminates on the basis

8    of a suspect class.  *See Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004) ("Strict

9    scrutiny is applied when the classification is made on 'suspect' grounds such as race, ancestry,

10   alienage, or categorizations impinging upon fundamental rights such as privacy, marriage, voting,

11   travel, and freedom of association.  Laws are subject to intermediate scrutiny when they

12   discriminate based on certain other suspect classifications, such as gender.") (internal citations

13   omitted); *see also Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1481 (6th

14   Cir. 1995) ("[T]he distinction between large and small charities does not implicate a suspect

15   class.").  Therefore, the Ordinance is subject to rational basis review.  *Romer*, 517 U.S. at 631

16   ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the

17   legislative classification so long as it bears a rational relation to some legitimate end.").

18       Under rational basis review, the classification must be "narrow enough in scope and

19   grounded in sufficient factual context for [courts] to ascertain some relation between the

20   classification and the purpose it serve[s]."  *Romer*, 517 U.S. at 632-33.  The rational basis inquiry

21   "employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines

22   that create distinctions is peculiarly a legislative task and an unavoidable one.  Perfection in

23   making the necessary classifications is neither possible nor necessary."  *Massachusetts Bd. of Ret.

24   v. Murgia*, 427 U.S. 307, 314 (1976).  In defending a statute on rational basis review, "the burden

25   is on the one attacking the legislative arrangement to negative every conceivable basis which

26   might support it."  *Kahawaiolaa*, 386 F.3d at 1280 (internal quotation marks, citations, and

27   modifications omitted).

28       Here, the Ordinance's "classifications" are rationally related to Oakland's concerns

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1   regarding maintaining the city's esthetics and pedestrian and traffic safety.  When an owner

2   operates a related business on the same locale as the UDCB, the bins can be easily monitored.

3   This supports Oakland's goals of diminishing the blight caused by poorly maintained bins.

4   Similarly, Oakland's Department of Planning and Building's reports presented multiple ways in

5   which the effects of different outdoor bins vary and why a separate set of regulations was needed

6   for UDCBs.  Recycle does not offer any arguments addressing why these justifications are not

7   rationally related to Oakland's regulatory purposes.[4]

8         Oakland's proffered explanations for the differing treatment of UDCBs are sufficient to

9   withstand rational basis review.  Recycle has not demonstrated a likelihood of success on the

10  merits, or raised any serious issues, on this claim.

11  **II.      IRREPARABLE HARM**

12        "To obtain injunctive relief, the movant must demonstrate either: (1) a combination of

13  probable success on the merits and the possibility of irreparable harm, or (2) that serious questions

14  are raised as to the merits and that the balance of hardships tips in its favor."  *Dep't of Parks &*

15  *Recreation for State of California v. Bazaar Del Mundo Inc*., 448 F.3d 1118, 1123 (9th Cir. 2006).

16  Here, as discussed above, Recycle has shown neither probable success on the merits nor serious

17  questions going to the merits.  Where the plaintiff is unable to establish the first requirement, the

18  court need not review the other factors, and the request for a preliminary injunction should be

19  denied.  *See Dep't of Parks & Recreation for State of California*, 448 F.3d at 1124; *see also*

20  *Valentino v. Select Portfolio Servicing, Inc*., No. 14-cv-05043-JCS, 2015 WL 1906122, at *5

21  (N.D. Cal. Apr. 24, 2015) (denying request for preliminary injunction based only on movant's

22  failure to establish likelihood of success of serious questions going to the merits).

23        But even if Recycle had met the first requirement for a preliminary injunction, it still has

24  not demonstrated that it will suffer irreparable injury absent an injunction.  "Irreparable harm is

25  traditionally defined as harm for which there is no adequate legal remedy."  *Arizona Dream Act*

26  *Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  "[E]conomic injury alone does not support

27  a finding of irreparable harm, because such injury can be remedied by a damage award."  *Rent-A-*

28

---

[4] Notably, Recycle's Reply does not address its Fourteenth Amendment claim at all.

1    *Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  The

2    mere "possibility" of irreparable harm is not enough to justify a preliminary injunction.  "A

3    plaintiff must do more than merely allege imminent harm sufficient to establish standing; a

4    plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive

5    relief."  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in

6    original).

7         Recycle argues that it is likely to suffer irreparable harm due to that fact that it is "facing

8    the loss of approximately 90[%] of its UDCBs in Oakland."  Mot at 17.  However, the true extent

9    of the impact of the Ordinance on Recycle is currently undetermined.  *Compare* Miller Decl. ¶3

10   (Oakland estimates that 137 UDCBs could be placed in the city after the Ordinance goes into

11   effect, which would result in a decrease of only 15 UDCBs and preserve more than 90% of the

12   existing UDCBs) *with* Duus Decl. ¶24 (Recycle estimates the regulations will eliminate 90% of its

13   UDCBs in Oakland).  Recycle has not yet applied for permits or been rejected.  It is possible that

14   fewer of its UDCBs will ultimately be affected or that competing bins will not be permitted,

15   allowing Recycle to expand to unexpected areas.

16        Additionally, Recycle asserts that the permit fee is "extremely burdensome" to the

17   organization.  Duus Decl. ¶28.  But the payment of fees is not an irreparable injury as Recycle

18   maintains an adequate remedy at law in the form of damages.

19        Recycle is also concerned about the potential damage to its goodwill and the ongoing

20   relationships it has within the community.  Opp. at 16.  "Loss of goodwill is an injury that can be

21   considered irreparable, and thus may support injunctive relief."  *Amylin Pharm., Inc. v. Eli Lilly &*

22   *Co.*, 456 F. App'x 676, 678 (9th Cir. 2011).  However, beyond conclusory statements that the

23   "imminent enforcement of the [O]rdinance will terminate those relationships" it has not offered

24   any specific evidence demonstrating its reputation in the community or the nature of the damage

25   to its relationships.  Opp. at 16.  Without more, Recycle has failed to show irreparable injury due

26   to loss of goodwill.  *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th

27   Cir. 1985) (affirming the district court's denial of a preliminary injunction on the grounds that

28   plaintiff failed to provide sufficient evidence of loss of reputation, competitiveness, and

United States District Court
Northern District of California

12

goodwill.); *see also Dotster, Inc. v. Internet Corp. For Assigned Names & Numbers*, 296 F. Supp. 2d 1159, 1163-64 (C.D. Cal. 2003) ("Although the loss of goodwill and reputation are important considerations in determining the existence of irreparable injury, there must be credible and admissible evidence" of the damage.).

Lastly, while "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," Recycle has not demonstrated that its First Amendment rights are being violated by the Ordinance. *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1480 (6th Cir. 1995) (internal quotation marks, citations and modifications omitted).

In light of the above considerations, Recycle has failed to establish immediate and irreparable harm.

### CONCLUSION

Because Recycle has not established either a serious question going to the merits or irreparable harm, it is not entitled to a preliminary injunction. Recycle's motion is DENIED. The parties shall meet and confer prior to the Case Management Conference on February 2, 2016 regarding a proposed trial and pre-trial schedule.

**IT IS SO ORDERED**.

Dated: January 28, 2016



WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California